**E. I. DU PONT DE NEMOURS & COM-
PANY, Incorporated, Appellant,**

v.

**Dennis F. HARRUP, Lester Blackmon,
Beulah F. Viar, John M. Crowder, Jr.,
and Charles E. Roan, Appellees.**

No. 7022.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1955.

Decided Nov. 7, 1955.

Aubrey R. Bowles, Jr., Richmond, Va. (H. Armistead Boyd, Jack N. Herod, Richmond, Va., Edward E. Reinhold, Wilmington, Del., and Bowles, Anderson & Boyd, Richmond, Va., on brief), for appellant.

T. Nelson Parker, Richmond, Va. (Thomas N. Parker, Jr., Richmond, Va., on brief), for appellees.

William W. Watson, Atty. United States Department of Labor, Washington, D. C. (Stuart Rothman, Sol., Bessie Margolin, Asst. Sol., and Jeter S. Ray, Regional Atty., United States Department of Labor, Washington, D. C., on brief), for James P. Mitchell, Secretary of Labor, United States Department of Labor, as amicus curiae.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by certain employees of E. I. du Pont de Nemours & Company, Incorporated, under the Fair Labor Standards Act of 1938 as amended, 29 U.S.C.A. §§ 201–217, to recover overtime compensation for services rendered in a cafeteria maintained by the company in connection with its Spruance plant at Ampthill near Richmond, Virginia, which was engaged in the production of rayon goods for interstate commerce. The case was first dismissed in the District Court upon the defendant's motion, accompanied by supporting affidavits, on the ground that the complainants were not engaged in the production of goods for commerce, or in any closely related process or occupation "directly essential" to the production of goods for commerce, as provided in § 3 of the stat-

ute as amended by the Act of October 26, 1949, 29 U.S.C.A. § 203(j). On appeal the decision was reversed in order that evidence might be taken and the case tried on its merits as to whether the services of the complainants were covered by the statute, since the facts before the court were not deemed sufficient for the decision of the question. The District Court was directed on the remand also to determine whether the activities of the complainants were performed to such an extent beyond the hours fixed by the statute so as to entitle the complainants to overtime compensation. See Hawkins v. E. I. Du Pont De Nemours & Co., 4 Cir., 192 F.2d 294.

It was alleged in the affidavits presented to this court on the first appeal that the plant was completely fenced in and that the employees were not allowed during their work shift to leave the plant except for good cause shown, and that the cafeteria was the only place for them to eat. On this showing we concluded that evidence should be taken to determine whether the operation of the cafeteria was in fact so closely related to the main business of the plant as to be indispensable to the production of goods for commerce. Upon the second trial additional evidence was presented and the District Court made the finding that the cafeterias and plants are remote from populous settlements and places to eat so that provision for food at the site of the work was essential.

The evidence relating to this point now before the court shows that only 45.8 per cent of the employees get their meals at the cafeteria, while the majority of the workers bring their lunch from home and eat it in the cafeteria or in some other convenient place in the plant, so long as regulations designed to protect the health, sanitation and safety of the workers are observed. The cafeteria is also used by those who bring their lunch for the purchase of drinks, ice cream and other incidentals. The employees are not actually forbidden to leave the plant during the lunch hour but as a practical matter it is essential for them to eat their mid-day meal in the plant or in the immediate vicinity because they are only allowed thirty minutes for lunch, and the only public eating places in the area are too small and too distant for the purpose. On the other hand, the evidence shows that two smaller plants operated by the company in the same general area are not furnished with cafeterias and nevertheless operate efficiently, and that plants as large as the Ampthill plant are operated by the company successfully in other states without cafeterias.

Under these circumstances, the question whether the cafeteria in the Ampthill plant is merely a convenience or is essential to the efficient operation of the plant may be open to doubt [1]; but it is not necessary in this case to decide it, for assuming that the cafeteria workers are engaged in the production of goods for commerce in the sense of the statute, it nevertheless appears that the services for which they claim overtime were so insignificant as to be unworthy of compensation.

These services were rendered by countermen or cashiers in the cafeteria and were preliminary to the beginning of their shifts. They consisted of receiving a fixed sum of money and sometimes information from the preceding outgoing operators during the concluding minutes of their shifts. For a period of seventeen years prior to the demand which forms the basis of this suit, it had been the voluntary practice of incoming cashiers to arrive a few minutes before the change of shift so that the outgoing man could leave promptly at the end of his period. It was the duty of the outgoing man to make a written report to the company of the amount of money received from his predecessor, together with the amount of money received by him during his shift, and the amount of money turned over by him to

1. See the discussion of the question in Mitchell v. Anderson, 9 Cir., —— F.2d ——.

his successor which was fixed at the sum of $200. It was also his duty to place the balance of the money in a safe place provided by the company and to deliver to his successor the sum of $200 and impart to him any needed information in respect to the operations. The only duty of the incoming man during this period was to receive the information and to receive and count the money turned over to him.

After a while, it became evident to the operators of the plant that the outgoing man could not make the necessary closing arrangements and at the same time wait on the customers. Accordingly about five years before the present controversy arose the company ordered the cafeteria to be closed for ten minutes prior to the end of the cashier's shift to enable him to get his affairs in shape to make the transfer to his successor. At the same time the company directed that the cafeteria remain closed for five minutes after the beginning of the next shift to permit the incoming cashier to get ready to serve the workers. He was, however, required to be present before his shift began for a sufficient length of time to receive and count the sum of $200 delivered to him and to receive the information if any which his predecessor had to communicate; and it is this short period of time which constitutes the basis of the claims in suit.

The District Judge came to the conclusion that the incoming cashier was required to report for work ten minutes before the beginning of his shift. Our examination of the evidence convinces us, however, that this requirement was not imposed. The orders were merely that the incoming man was to get to his post in time to accomplish the transfer of the money. No report was kept of the precise time of his arrival and many times he did not reach his station until after the ten minute period allowed to the outgoing man had begun; but in no instance was he docked of pay, or disciplined for being late, although a strict account was kept of the time spent by him on his regular shift and deductions

for non-compliance were made. The direct testimony clearly shows that the work performed in accepting the transfer consumed much less than ten minutes of time; and this testimony is buttressed by the obvious fact that the counting of $200 and the reception of information must have consumed a very much shorter period. It must be borne in mind that the incoming cashier was not required to operate the cafeteria during the ten minute interval allowed his predecessor to close his accounts, and was himself allowed and paid for the first five minutes of the next shift in which to prepare to serve the customers.

The right of workers to compensation for marginal activities of this kind has been the subject of much consideration both by Congress and the courts since the Fair Labor Standards Act was passed. It will be recalled that it was held in Tennessee Coal, Iron & R. Co. v. Muscoda Local, 1944, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, and in Jewel Ridge Coal Corp. v. Local, 1945, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534, that time spent by miners in traveling to and fro between the portal and the work face of a mine must be compensated, notwithstanding any custom or contract to the contrary; and that in Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, it was held that time necessarily spent by employees in walking to work on the pottery premises must be paid for. These decisions, however, were rendered by divided courts and led directly to the passage of the Portal to Portal Act of 1947, 29 U.S.C.A. § 251 et seq., wherein Congress gave more specific direction as to how these questions should be solved. Section 4 of the new statute specifically provided that in the absence of an express provision of a contract or a contrary custom or practice an employer should not be subject to liability to pay an employee for or on account of the following activities:

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activ-

ity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." [2]

We think that this statute controls the decision in the pending case for we are satisfied that the activities for which compensation is demanded were clearly preliminary to the principal activities for which the cafeteria cashiers were employed and paid. The case is much stronger for the employer than that considered in Mitchell v. King Packing Co., 9 Cir., 216 F.2d 618, certiorari granted 349 U.S. 914, 75 S.Ct. 605 where work done by knifemen of a meat packing company in sharpening their knives outside their scheduled work period was held to be preliminary to principal activities within the meaning of the Portal to Portal Act and therefore not compensable.

Not only were the activities preliminary but they were so insignificant and of so short a duration as to fall within the classification of de minimis, which was given effect by the courts in cases of this kind even before the Portal to Portal Act was passed. Thus, in the Mt. Clemens case, where preliminary and postliminary activities of the worker sometimes consumed as much as 56 minutes per day and hence were held compensable, the Supreme Court spoke this word of caution, 328 U.S. 692, 66 S.Ct. 1195:

"We do not, of course, preclude the application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."

The de minimis rule clearly applies to the preliminary services rendered and the time consumed by the incoming cashier in the pending case in taking over from his predecessor during the period prior to his shift. This becomes the more evident by comparison with the holding of this court in United States Steel Co. v. Burkett, 4 Cir., 192 F.2d 489, where we decided that foremen should be paid for services rendered at the request of their superiors during thirty minutes before and ten minutes after the shift to which they were assigned. Compare also Steiner v. Mitchell, 6 Cir., 215 F.2d 171, certiorari granted 349 U.S. 914, 75 S.Ct. 603, where workers were held compensable for substantial periods of time consumed in changing clothes and showering required by the hazardous conditions of their employment.

The judgment of the District Court is reversed and the case is remanded with direction to dismiss the complaint.

Reversed and Remanded.

---

**2.** See the opinion of Judge Parker in Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58, where the impact of the earlier decisions of the Supreme Court on industry and the legislative history of the amending statute were described, and it was held that workman's claims for compensation for overtime spent in changing clothes and walking to and from the place of work were not tenable.