Wade V. CARTER et al., Plaintiffs,

v.

PANAMA CANAL COMPANY,
Defendant.

Civ. A. No. 1890–68.

United States District Court,
District of Columbia.

May 20, 1970.

A. Fred Freedman, Washington, D. C., Abraham E. Freedman, and Stanley B. Gruber, New York City, for plaintiffs.

Thomas J. Lydon, and Robert R. Donlan, of the Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### I.

The plaintiffs are towing locomotive operators employed by the defendant Panama Canal Company in the Canal Zone. They seek overtime pay of at least 15 minutes per day of allegedly compensable work computed in accordance with 5 U.S.C. § 5544 for all time spent performing the activity in question since Juy 29, 1965.

The defendant Panama Canal Company is a federally chartered corporation of the United States and is subject to suit in the United States District Court for the District of Columbia pursuant to 2 Canal Zone Code §§ 61(c) and 65(a) (3).

### II.

To transit the Panama Canal a vessel must pass through three lockage areas, i. e., Pedro Miguel and Miraflores on the Pacific side, and Gatun on the Atlantic side. Each plaintiff works at one of the three areas on an eight hour shift.

The plaintiffs operate electrically-driven towing locomotives to pull ships through the locks and to control the lateral movement of the ships within the lock chambers. The locomotives move on each side of a lock chamber and travel the full length of the chamber wall.

At the end of any given work period the operator leaves his locomotive where it then is. That requires the succeeding operator to proceed to that point to assume his duties since historically the duty station of an operator has always been the locomotive to which he is assigned. However, prior to reporting to the lock area the operator knows neither the identity nor the location of the locomotive to which he is assigned for that particular work period. To learn the location and the identity of the locomotive to which he is assigned the operator must check at a lockage assignment board located within the lock area, put a mark by his name on the board, and walk to the designated locomotive.

At Gatun the assignment board is about 75 feet from the main gate; at Pedro Miguel the assignment board is within 25 feet of the main gate; and at Miraflores the board is located in the control house some 500 feet from the main gate.

The time consumed by an operator in walking from the lockage assignment board to his assigned locomotive varies from 2 minutes to 15 minutes per day depending upon the location of his assigned locomotive. The average time is 8 minutes.

There is no requirement that an operator report to the assignment board. The only requirement is that he report to his duty station (his locomotive) by the time his shift begins. However, since the assigned locomotive may be located the maximum distance from the assignment board, the operator of necessity must check the board at least 15 minutes before the start of his eight hour shift to arrive at his locomotive on time.

During the period an operator is on defendant's premises prior to reaching his duty station he is subject to defendant's rules and regulations governing employees and may be disciplined for violation of those rules.[1]

---

1. An operator is also subject to a reporting procedure known as a call-in on an "as soon as possible" basis. Under this procedure an operator may be called in when there is a breakdown or the regularly scheduled locomotive operator is either ill or absent. On those occasions the operator receives compensation from the

Prior to January 1, 1968, locomotive operators were required to check in and out with a timekeeper at the main gate of the lock area merely for the purpose of determining their presence in the lock area, not for the purpose of time-keeping.

For a long period prior to the commencement of this case (and at least prior to July 29, 1965) the locomotive operators and their representatives, including National Maritime Union of America, AFL-CIO, have requested the Canal Company to pay overtime for the time spent between checking the assignment board and reaching the locomotives as well as the additional time spent, prior to January 1, 1968, in checking in with the timekeeper and walking to the assignment board. The Company has rejected all formal and informal claims for this overtime compensation.

The question before the Court is whether the activity of the plaintiffs in checking the assignment board and walking to their duty stations constitutes compensable overtime work. For the reasons listed below the Court concludes that it does not.

time he enters the gate at the lock area and the Company considers the time spent between entering the gate and reaching the locomotive as compensable work time. However, the emergency call-in for a loco-motive operator creates an entirely dif-ferent work situation than the normal scheduled work day. An emergency opera-tor is in a stand-by situation without a particular duty station to report to im-mediately. Since he does not have an as-signed duty station, and since he is present primarily for the benefit of the Com-pany, a different standard must be used to fix his compensation and he is paid from the time he enters the main gate.

2. In reference to overtime pay the statute reads:

"(a) An employee whose basic rate of pay is fixed and adjusted from time to time in accordance with prevailing rates by a wage board or similar administra-tive authority serving the same purpose is entitled to overtime pay for overtime work in excess of 8 hours a day or 40 hours a week. However, an employee subject to this subsection who regularly

## III.

The plaintiffs rely on 5 U.S.C. § 5544,[2] the Federal Employees Pay Act, and the cases interpreting its application.[3] How-ever, the Federal Employees Pay Act simply grants employees the right under certain conditions to compensation for overtime work. It does not fully set out the standards as to what constitutes com-pensable overtime. To determine the standards and the types of activity that fall within the standards (and are there-by compensable as overtime) the Court must look to the Fair Labor Standards Act, 29 U.S.C. § 217 et seq., as amended.

The so-called Morse Amendment to that Act, 29 U.S.C. § 218(b), specifically made the Act's wage requirements appli-cable to all wage board employees of the Panama Canal Company. The Amend-ment provides that:

"(b) Notwithstanding any other provision of this chapter (other than section 213(f) of this title) or any other law—

(1) any Federal employee in the Canal Zone engaged in employment of the kind described in section 5102 (c) (7) of Title 5, or

is required to remain at or within the con-fines of his post of duty in excess of 8 hours a day in a standby or on-call status is entitled to overtime pay only for hours of duty, exclusive of eating and sleeping time, in excess of 40 a week * * *.

\* \* \* \* \*

"Time spent in a travel status away from the official duty station of an employee subject to this subsection is not hours of work unless the travel (i) involves the performance of work while travel-ing, (ii) is incident to travel that in-volves the performance of work while traveling, (iii) is carried out under arduous conditions, or (iv) results from an event which could not be scheduled or controlled administratively."

3. The Supreme Court in United States v. Townsley, 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454 (1945) and United States v. Hearne, 331 U.S. 858, 67 S.Ct. 1752, 91 L.Ed. 1865 (1946) held that the prede-cessor to § 5544 (5 U.S.C. § 673c) was applicable to Panama Canal Company employees.

(2) any employee in a non-appropriated fund instrumentality under the jurisdiction of the Armed Forces, shall have his basic compensation fixed or adjusted at a wage rate that is not less than the appropriate wage rate provided for in section 206(a) (1) of this title (except that the wage rate provided for in section 206 (b) of this title shall apply to any employee who performed services during the workweek in a work place within the Canal Zone), and shall have his overtime compensation set at an hourly rate not less than the overtime rate provided for in section 207(a) (1) of this title."

The Portal to Portal Pay Act, 29 U.S. C. §§ 251–262, also amending the Fair Labor Standards Act, dealt specifically with the right to overtime compensation and it is to this act that the Court looks for guidance. The Portal to Portal Pay Act reads in pertinent part:

"(a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer." 29 U.S.C. § 254.

The plaintiffs rely heavily upon Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) in which the Supreme Court addressed itself to the problem of what constitutes compensable activity. That case held that "the time necessarily spent by the employees in walking to work on the employer's premises, following the punching of time clocks, was working time within the scope of the [Fair Labor Standards Act]." Id. at 691, 66 S.Ct. at 1194.

In the Mt. Clemens case the employees spent 2 to 12 minutes walking on the premises. This time was under the complete control of the employer since it depended solely upon the physical arrangements of his plant. Such walking was for the benefit of the employer to enable him to achieve his productive aims, and it was in no way related to the convenience and necessity of the employee. The Court distinguished this walking time from the time spent in traveling from the employee's home to work and concluded that:

"[T]he time spent in walking to work on the employer's premises,

after the time clocks were punched, involved 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.' Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949, Jewell Ridge [Coal] Corp. v. Local [No. 6167], 325 U.S. 161, 164–166, 65 S.Ct. 1063, 89 L.Ed. 1534. Work of that character must be included in the statutory work week and compensated accordingly * * *." *Id.* at 691–692, 66 S.Ct. at 1194.

The Court also held that time necessarily spent by employees in *preliminary* activities after arriving at their places of work must be included within the work week and compensated accordingly. *Id.* at 692–693, 66 S.Ct. 1187.

However, in both of the situations noted above the Court said it would be appropriate to apply a *de minimis* rule "where the minimum walking time is such as to be negligible" or when the preliminary activities involved "insubstantial and insignificant periods of time." *Id.* at 692–693, 66 S.Ct. at 1195.

This decision standing alone is persuasive. However, one year after the Supreme Court spoke, the Portal to Portal Pay Act became law and it is quite evident from the text of the statute [4] as well as from its legislative history that Congress intended to blunt the effect of the *Mt. Clemens* decision.

The Reports of the Senate Judiciary Committee clearly indicate that Congress considered reporting to a station for daily assignment or walking to a work area on the employer's premises not compensable within the meaning of the Act.

"[W]alking to his lathe, work bench, reporting station for his assignment for the day, or to other particular work location, is not to be considered an activity which is compensable under the Fair Labor Standards Act unless com-

pensable by contract." S.Rep. No. 37, 80th Cong., 1st Sess., 45 (1947).

To the same effect is Senate Report No. 48, 80th Cong. 1st Sess., 47 (1947), where it is stated:

'The rule laid down is that activities which take place either prior to the time at the beginning of his workday, when such employee commences, or subsequent to the time at the end of his workday, when such employee terminates his principal activity or activities, are activities (called portal-to-portal activities) which are not compensable except by contract or by a practice or custom not inconsistent therewith. The following activities outside the workday are among those not to be considered compensable under the Fair Labor Standards Act unless made so by contract or by a practice or custom not inconsistent therewith:

(1) Walking, riding, or traveling to and from the actual place of performance of the principal activity or activities within the employer's plant, mine, building, or other place of employment, irrespective of whether such walking, riding, or traveling occurs on or off the premises of the employer or before or after the employee has checked in or out. Examples of this are (a) walking or riding from the plant gate to the employee's lathe, work-bench, or other actual place of performance of his principal activity or activities; (b) riding on busses from a town to an outlying mine; (c) riding on busses or trains from an assembly point to a particular site at which a logging operation is being conducted.

(2) Checking in or out and waiting in line to do so, changing clothes, washing up or showering, waiting in line to receive pay checks, and the performance of other activities occurring prior and subsequent to the workday, such as the preliminary activities which were involved in the

4. See p. 389 *supra.*

Mt. Clemens case (U.S. No. 342, June 10, 1946).

The foregoing list of noncompensable activities is not intended to be exhaustive but merely to indicate some types of activities outside the employee's workday which are not to be compensable under the Fair Labor Standards Act * * * "

In the Senate debate over the enactment of this statute, Senator Cooper, the bill's principal sponsor, said:

" * * * [W]e have believed that * * * in the Mt. Clemens case the Court went too far and that under the decision * * * activities were held to be compensable when logically and equitably there should be *no compensation activities * * *.* The Committee decided, first, that we should make noncompensable, walking, riding, or traveling to and from the actual place of performance of the principal activities which such employee is employed to perform. Then, clearly and definitely, as to the future, an employee cannot receive compensation for any *walking*, riding, or traveling time to the *actual place of performance* where he begins his *actual activities*." (Emphasis supplied) 93 Cong.Rec. 2296–2297 (1947).

It has been held that only if the activities in question are an "integral part of and indispensable to" the employee's principal activity are they compensable under the portal to portal provisions of the Fair Labor Standards Act. Steiner v. Mitchell, 350 U.S. 247, 255, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956).

▇ Whether the activities were such an integral and indispensable part of the employee's principal activity as to be compensable is a question of fact. Dunning v. Q. O. Ordinance Corp., 233 F.2d 902, 903 (8th Cir. 1956).

▇ The Court concludes that passing an assignment board and walking 2 to 15 minutes to a locomotive is not an "integral part of and indispensable to"

the principal activity of operating the locomotive.

This activity is as much for the benefit of the employee as it is for the employer. Without passing an assignment board the operators would run the risk of not being on time at their locomotives. This is clearly distinguishable from the situation where an operator is called for emergency duty and receives compensation from the time he enters the gate. . In this latter situation the benefit is all to the employer. Since it is not known immediately where the operator will work, he is usually on a stand-by basis to be used when and where the company needs him and is entitled under those conditions to be compensated.[5]

The other cases relied on by the plaintiffs, in addition to *Mt. Clemens*, are distinguishable on their facts from the case at bar. In Abbott v. United States, 151 F.Supp. 929, 138 Ct.Cl. 459 (Ct. of Claims, 1957) the vessel pilots in the Canal Zone were not compensated for the time spent in returning to their starting point after piloting a ship through the Canal if such time was in excess of their normal shift. The Court held that since this travel time was paid for by the company when it was not overtime, it could not be considered noncompensable just because it was overtime. That situation is clearly different from the issue facing the Court here.

In Anderson v. Panama Canal Company, 194 F.Supp. 765 (D.C.Z.1961), rev'd on other grounds, 312 F.2d 98 (5th Cir.) cert. denied, 375 U.S. 832, 84 S.Ct. 43, 11 L.Ed.2d 63 (1963), dredge employees of the Company were not compensated for the time spent traveling in Canal vessels from the dock to the dredges. In holding this time compensable the Court noted that the dredge employees were often required to perform work for the Company while traveling to the dredge. This also differs from the case facing the Court as the Court has concluded that checking a name on an

---

5. See note 1, *supra*.

**392**

assignment board is not compensable activity.

The plaintiffs rely on Frank, et al. v. Wilson & Co., 172 F.2d 712 (7th Cir.) cert. denied, 337 U.S. 918, 69 S.Ct. 1159, 93 L.Ed. 1727 (1949) in arguing the inapplicability of the Portal to Portal Act to this situation. In *Frank* the Court found that a labor contract negotiated between the union and the company provided for overtime compensation for hours worked in excess of 40 hours a week. This contract as provided by § 254 (b) took the case out from under the provisions of the Portal to Portal Act. In the case before the Court, however, there is not a negotiated contract but a statute giving federal workers a right to overtime compensation. A statute is clearly not a contract. If Congress had intended such a statute to also be an exception to the Act they obviously would have included it. And no mention of such an exception is found in the legislative history.

█ Aside from the appropriateness of the Portal to Portal Act in this situation, the activity here in question would fall under the *de minimis* rule. As noted above, the Supreme Court in Anderson v. Mt. Clemens Pottery Co., *supra*, 328 U.S. at 693, 66 S.Ct. at 1195, 90 L.Ed. 1515, pointed to the applicability of the *de minimis* rule where the preliminary activity involved "insubstantial and insignificant" periods of time. The Court looked to the realities of the industrial world and said "[I]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* at 692, 66 S.Ct. at 1195. This section of the opinion was not considered when Congress enacted the Portal to Portal Act and remains the rule today.

Cases subsequent to *Mt. Clemens* have held the following amounts of time consumed in preliminary activities or walking to be *de minimis:* Frank, et al. v. Wilson & Co., 172 F.2d 712 (7th Cir.) cert. denied, 337 U.S. 918, 69 S.Ct. 1159, 93 L.Ed. 1727 (1949) (5 minutes); McIntyre v. Joseph E. Seagram & Sons,

Inc., 72 F.Supp. 366 (W.D.Ky.1947) (10–20 minutes); McComb v. C. A. Swanson & Sons, 77 F.Supp. 716 (D.Neb.1948) (10–11 minutes); Lasater v. Hercules Powder Co., 73 F.Supp. 264 (E.D.Tenn. 1947) (possibly 10 minutes). Thus, the Court feels that the time required to look for and place a check mark by a name on the assignment board and walk to a duty station (2 to 15 minutes) is negligible and not compensable.

IV.

The Court concludes that the activity in question whether it falls under the Portal to Portal Act or under the *de minimis* rule is not compensable.

Having reached this decision the Court finds it unnecessary to discuss defendant's claims of laches and estoppel.

It is ordered that the complaint be dismissed.

This memorandum constitutes the Court's findings of fact and conclusions of law.