James D. HODGSON, Secretary of Labor,
United States Department of Labor

v.

KATZ AND BESTHOFF, #38, INC.,
a corporation.

Civ. A. No. 18122.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Nov. 15, 1973.

**1194**

Richard F. Schubert, M. J. Parmenter, William E. Everheart, Sol. of Labor, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Henry J. Read, Daniel Lund, Montgomery, Barnett, Brown & Read, New Orleans, La., for defendant.

NAUMAN S. SCOTT, District Judge:

This is an action brought by the Secretary of Labor (Secretary) pursuant to § 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (Act), seeking to enjoin the defendant, Katz & Besthoff #38, Inc. (K & B) from allegedly violating the provisions of §§ 15(a)(2) and 15(a)(5) of the Act, and to restrain any withholding of payment of overtime compensation found to be due defendant's employees under the Act.

This action was filed by the Secretary on July 25, 1972. K & B has admitted that since July 25, 1969, it has been a corporation engaged in the operation of a drug store in Alexandria, Louisiana, and that it is a wholly owned corporate subsidiary of Katz & Besthoff, Inc., a corporation with its main office located in New Orleans, Louisiana. Further, defendant has admitted that during the period since July 25, 1969, it has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the Act.

I.

Section 17 of the Act, the jurisdictional authority asserted by the Secretary for instituting this action, reads in part as follows:

"The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of Section 15, including in the case of violations of Section 15(a)(2) the restraint of any withholding of payment of . . . overtime compensation found by the court to be due to employees under this Act . . . ."

We have jurisdiction over the subject matter of this case. It is well settled that the provisions of § 16(b) and § 16(c) of the Act are not to be read in pari materia with the provisions of § 17, Hodgson v. Ewing, 451 F.2d 526 (5th Cir. 1971); Hodgson v. Wheaton Glass Co., 446 F.2d 527 (3rd Cir. 1971); Shultz v. Mistletoe Express Service, 434

F.2d 1267 (10th Cir. 1970); that employees are not proper parties in a § 17 action brought by the Secretary of Labor, Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970); Hodgson v. Board of Commissioners of County of Miami, 69 L.C. ¶ 32, 771 (W. D.Ind.1972); and that the consent of the employees is not a jurisdictional prerequisite for a § 17 action, Hodgson v. Humphries, 454 F.2d 1279 (10th Cir. 1972); Wirtz v. Novinger's, Inc., 261 F.Supp 698 (M.D.Pa.1966); Wirtz v. English, 245 F.Supp. 628 (D.C.Kan. 1965); Jones v. American Window Cleaning Co., 210 F.Supp. 921 (E.D.Va. 1962); Wirtz v. Lockhart, 230 F.Supp. 823 (N.D.Ohio 1964); Wirtz v. Wimpy, 48 L.C. ¶ 31, 525 (M.D.Fla.1963); Shultz v. Spot Cash Tire & Appliance of Columbus, Mississippi, Inc., 62 L.C. ¶ 32, 306 (N.D.Miss.1970).

## II.

The Secretary contends that during the period from July 25, 1969 through June 27, 1971, K & B willfully violated the overtime provisions of § 7 of the Act by compensating its cashiers for their employment in excess of 40 hours in a work week at a rate of pay which was less than one and one-half times the regular rate at which they were employed; that defendant compensated its cashiers for their work on the basis of a scheduled number of weekly work hours and ignored (for overtime pay purposes) any time worked by such employees outside such scheduled hours. Defendant denies liability and contends that no cashier in its employ has accumulated working time for which overtime compensation is due. Defendant alleges that any work performed by its cashiers either before or after their scheduled work hours for which they were not compensated constituted non-compensable preliminary or postliminary activities and as such was subject to the statutory exemptions of

the Portal-to-Portal Act of 1947 (29 U. S.C. § 254) and to the *de minimis* rule established in the jurisprudence.

Section 7 of the Act (29 U.S.C. § 207) provides that no employer covered by the Act shall employ any employee for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of 40 hours at a rate not less than time and one-half his regular hourly rate. In 1946 the United States Supreme Court in the case of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), found that under this provision employees were engaged in compensable activity for time spent walking to work on the employer's premises after punching in and that time necessarily spent in preliminary activities after arriving at their places of employment must also be compensated.[1]

In response to the *Mt. Clemens* decision, Congress passed the Portal-to-Portal Act of 1947 (29 U.S.C. § 251 et seq.). The congressional declaration of findings and policy are relevant to the Act's interpretation and application. Section 1 of the Act (29 U.S.C. § 251) states, in part:

"(a) The Congress hereby finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long established customs, practices and contracts between employers and employees, thereby creating wholly unexpected liability, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, . . . (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation or reward beyond that included in their agreed rates of pay;

1. The employee's preliminary duties in Mt. Clemens involved putting on aprons and overalls, removing shirts, taping or greasing their arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools.

(5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; . . . ."

It was further declared that the Act was necessary to meet "existing emergency and to correct existing evils." 29 U.S.C. § 251(b).

The exemption created by Section 4 of the Portal-to-Portal Act (29 U.S.C. § 254) is the provision most pertinent to the instant case and the one passed in direct response to the *Mt. Clemens* decision. Section 4 of the Portal-to-Portal Act provides that no overtime compensation shall be due for:

"(1) Walking, riding, or traveling to and from the actual place or performance of the principal activity or activities which such employee is employed to perform; and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

After the passage of the Portal-to-Portal Act, the United States Supreme Court interpreted the Section 4 exemptions in Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), and set forth the test to be applied for determining whether an activity is preliminary or postliminary to the principal work activities of the employee.

"We, therefore, conclude that activity performed either before or after the regular work shift, on or off the production line, are compensable under the Portal-to-Portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are em-

ployed . . . ." 350 U.S. 256, 76 S.Ct. 335, 100 L.Ed.2d 273.

The Supreme Court left for the lower courts to decide as each case is presented whether the facts are such that the activities for which overtime pay is sought comes within the integral and indispensable tests for purposes of applying the Portal-to-Portal Act exemptions. Blum v. Great Lakes Carbon Corp., 418 F.2d 283 (5th Cir. 1969); Mitchell v. Southeastern Carbon Paper Co., 228 F.2d 934 (5th Cir. 1955).

A case decided under the Portal-to-Portal Act exemptions practically on all fours with the instant case is E. I. DuPont De Nemours & Co. v. Harrup, 227 F.2d 133 (4th Cir. 1955). In *Harrup* the claimants were cashiers in the defendant cafeteria. When beginning a shift, they were required to be present a sufficient length of time in advance to receive and count the sum of $200 and to receive the information, if any, which the predecessor had to communicate. The Court found that this activity involved up to 10 minutes daily. In no instance was any cashier docked for being "late" during this preshift time even though strict account was kept of regular shift time and adjustments for noncompliance were made. The Court held that under the Portal-to-Portal Act, these activities ". . . were clearly preliminary to the principal activities for which the cafeteria cashiers were employed and paid." 227 F.2d 136. *See also* Carter v. Panama Canal Co., 314 F. Supp. 386 (D.C.1970), aff'd 150 U.S. App.D.C. 198, 463 F.2d 1289 (1972).

■ By virtue of the mere passage of the Portal-to-Portal Act, there is legislative recognition that most if not all forms of employment involve some preliminary and postliminary activities for which compensation is not due nor expected. Every preliminary and postliminary activity which the Act exempts is related to the employee's employment. However, merely because such activity regularly, even daily, precedes the entrance by the employee upon his princi-

pal activity, does not make such activity an integral and indispensable part of the employee's principal activities. It is clear from a reading of the Act that the most significant factor is the principal activity at the actual place of performance. Thus in *Harrup*, the principal activity was checking out customer purchases and the actual place of performance was at the cash register and in *Carter* the principal activity was locomotive operation, actually performed in the locomotive.

In this proceeding there were no preshift or postshift activities by the cashiers which do not fall within the preliminary and postliminary time exception except the postshift service of customers by the liquor cashier which is discussed below. The principal activity of the cashiers was waiting upon customers and this activity usually commenced when the store was open and terminated when the store was closed. The counting of the $50 cash bank was the only regular preliminary activity and while suggested as a good practice, was by no means necessary to the commencement of the principal activity. It was done primarily for the benefit and convenience of the employee to insure that she would not have difficulty balancing her accounts when she finished the day's work. The cashiers were not required to follow this practice and no cashier was ever disciplined for not doing so. Furthermore, no cashier was ever docked or disciplined for not arriving in sufficient time before the shift to receive or count her càsh, the only requirement being that the cashier be at her register at the start of the shift.

In regard to the postliminary time of the cashiers, it was established that virtually all the time the drug and tobacco cashiers had their registers read out and their accounts balanced well in advance and were free to leave at the end of their shift. The Secretary's own

analysis in Exhibit B attached to its supplemental trial brief reveals the cashiers punched out from the early shift on time or early 47% of the time; on time, early or within 5 minutes after 72% of the time; and on time, early or within 10 minutes after 85% of the time.[2]

The other activities alleged by the Secretary to be compensable (stock work, turning on counter lights, dusting and sweeping, arranging displays, etc.) were irregular and haphazard. They were not required by management and were preliminary or postliminary to the cashiers' principal activity.

Prior to June 1971 the liquor cashier on the late shift often had to serve customers who were in the store at closing time. Although this postshift activity happened with a fair amount of regularity we find that the amount of late time in each instance was minimal, and that the practice was eliminated in June 1971 by scheduling the shift of this cashier from 12:45 P.M. to 9:15 P.M. This activity falls within the *de minimis* rule established in Anderson v. Mt. Clemens Pottery Co., *supra:*

> "This work week contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." 328 U.S. 692, 66 S.Ct. 1195, 90 L.Ed. 1525.

This rule was applied by the courts as an additional basis for the decision in both the *Carter* (2 to 15 minutes per day) and *Harrup* cases.[3]

---

2. The percentages reflected in Exhibit D do not detract or strengthen this conclusion. Actually, the figures in this exhibit are misleading since no distinction is drawn between the liquor cashiers and the other cashiers.

3. The *Carter* decision listed several other cases where the rule was applied to defeat recovery: Frank v. Wilson & Co., 172 F.2d 712 (7th Cir. 1949), (5 minutes per day—even though the work was otherwise consid-

In summation, the factual result which emerges from an analysis of the testimony and a consideration of the entire employment roster, is the total absence of any pattern, practice, rule, routine, method, habit or understanding, other than inadvertent and isolated exceptions which are bound to occur in any business enterprise, which required any cashier, other than liquor, to punch in or out other than in accordance with the time clock rules, and further that such early and late punch ins which did occur, were governed virtually without exception by the employee's own convenience.

## III.

The Secretary has alleged that defendant has violated the record keeping provisions of § 11(c) of the Act (29 U.S.C. § 211(c) by not maintaining its time cards for a period of three years. It is the Secretary's position that since defendant's payroll records contain only the names of defendant's employees, their pay rates, their weekly straight time pay and their weekly overtime pay, if any, and since the only records of defendant which reflect the employee's beginning and ending time are the time cards, these records must be kept for a minimum of three years. We reject this contention.

Section 11(c) of the Act provides that an employer ". . . shall make, keep and preserve such records . . . of the wages, hours and other conditions . . . and shall preserve such records *for such period of time* . . . as [the Secretary] shall prescribe by regulation . . . ." (Emphasis and brackets supplied). The Secretary's

regulations appear in Part 516 of 29 CFR. Section 516.2(a)(7) provides generally that employers shall maintain and preserve payroll or other records showing hours worked. But this section, the same as the above quoted statute section, does not state the period during which such records must be preserved.

Time periods for record preservation are specifically set forth in subsequent sections of 29 CFR:

*"Section 516.5 Records to be preserved 3 years*

Each employer shall preserve for at least 3 years:

(a) *Payroll Records.* From the last date of entry, all those payroll or other records containing the basic employee information and data required under any of the applicable sections of this part, . . . ."

\*       \*       \*       \*       \*       \*

*Section 516.6 Records to be preserved 2 years*

(a) Supplementary basic records: Each employer required to maintain records under this part shall preserve for a period of at least two years:

(1) *Basic employment and earnings records.* From the date of last entry, *all basic time and earnings cards or sheets of the employer on which are entered the daily starting and stopping time of individual employees,* or of separate work forces, or the individual employee's daily, weekly, or pay period, amounts of work accomplished (for example, units produced) when those amounts determine in whole or in part the pay period earnings or wages of those employees.

ered compensable) ; McIntyre v. Joseph E. Seagram & Sons, 72 F.Supp. 366 (W.D.Ky. 1947), (10 to 20 minutes per day) ; McComb v. Swanson & Sons, 77 F.Supp. 716 (D.C. Neb.1948), (10 to 11 minutes per day—even though the work was otherwise considered compensable) ; and Lasater v. Hercules Powder Co., 73 F.Supp. 264 (E.D.Tenn. 1947), (up to 10 minutes per day). The rule was also applied in the following additional cases: Green v. Planters Nut & Choc-

olate Co., 177 F.2d 187 (4th Cir. 1949), (up to 10 minutes per day) ; Smith v. Cleveland Pneumatic Tool Co., 173 F.2d 775 (6th Cir. 1949), (1 to 12 minutes per day—even though the work was otherwise considered compensable) ; Cherup v. Pittsburg Plate Glass Co., 350 F.Supp. 386 (N.D.W.Va. 1972) ; Abel v. Morey Machinery Co., 10 F.R.D. 187 (S.D.N.Y.1950), (up to 11 minutes per day—even though the work was otherwise considered compensable).

(2) Wage rate tables . . . .

(3) Worktime schedules . . . ."

(Double emphasis only added).

Additionally, the Government's own official pamphlet (Exhibit D–7) which explains the Act and the regulations states "records that must be kept for two years are employment and earnings records such as time cards . . .".

Thus in view of the above quoted explicit language, we find that the defendant did not violate the record keeping provisions of the Act by maintaining its time cards for only two years.

## IV.

Defendant should submit a judgment for execution in accordance with Local Rule 9(e).