**WHELAN SECURITY COMPANY, INC.
a Missouri Corporation**

v.

**The UNITED STATES.**

No. 400–83C.

United States Claims Court.

March 5, 1985.

As Corrected March 18, 1985.

---

Ira L. Blank, St. Louis, Mo., attorney for plaintiff.

M. Susan Burnett, Washington, D.C., with whom was Acting Asst. Atty. Gen.,

Richard K. Willard, Washington, D.C., for defendant. Mark C. Ramsey, Gen. Services Administration, and Eleanor Lauderdale, U.S. Dept. of Labor, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

This is an action to recover liquidated damages withheld pursuant to the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. §§ 327–33 (1982).

## FACTS

The plaintiff, Whelan Security Company, Inc. (Whelan), provides guard services for the Internal Revenue Service in Memphis, Tennessee under a contract with the General Services Administration. An investigator for the Department of Labor (DOL) found that Whelan failed to pay its employees overtime for 15 minutes of extra work, as required by the CWHSSA. During the 15 minutes in question, the security guards walked to a locker room to pick up weapons, holsters, and other equipment before reporting to their assigned work posts; the security guards returned the equipment before leaving work.

In late 1981 Whelan paid back wages of $3,321.21 and agreed to comply with the law. After learning that Whelan had failed to pay overtime for the same kind of work under a similar contract, the Contracting Officer assessed statutory liquidated damages of $62,740. Pursuant to 40 U.S.C. § 330(c), Whelan appealed to the Commissioner of Public Buildings Service (PBS), General Services Administration (GSA), who issued a final decision affirming the assessment. When Whelan requested reconsideration, the Commissioner recommended reducing the assessment to $15,685. The Department of Labor accepted the recommendation, but rounded off the sum to $15,690 because the CWHSSA imposes a penalty of $10 per incident. *See* 40 U.S.C. § 328(b)(2).

The plaintiff asserts that the Government has withheld $15,690 from payments

due under the contract. It demands a refund of that amount plus interest, costs, and attorneys' fees. Both parties have moved for summary judgment. After hearing oral argument and considering the entire record, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## DISCUSSION

### A. *Scope of Review*

Section 1499 of Title 28, U.S.C. gives this Court jurisdiction to hear claims for refunds of liquidated damages withheld under § 104 of the CWHSSA [40 U.S.C. § 330]. The CWHSSA permits a contractor aggrieved by the assessment of liquidated damages to appeal to the head of the agency for which the work was done (in this case the Commissioner of PBS acted for GSA). The agency head reviews the determination of damages and can issue a final order affirming the determination. But,

> if it is found that the sum determined is incorrect or that the contractor or subcontractor violated the provisions of sections 327–332 of this title inadvertently notwithstanding the exercise of due care on his part and that of his agents, recommendations may be made to the Secretary that an appropriate adjustment in liquidated damages be made, or that the contractor or subcontractor be relieved of liability for such liquidated damages. ... The decision of the Secretary shall be final. In all such cases in which a contractor or subcontractor may be aggrieved by a final order for the withholding of liquidated damages ... such contractor or subcontractor may, within sixty days after such final order, file a claim in the United States Claims Court: *Provided, however,* That final orders of the agency head ... or the Secretary, as the case may be, shall be conclusive with respect to findings of fact if such findings are supported by substantial evidence.

40 U.S.C. § 330(c).

For purposes of this appeal, the violations are established. The plaintiff paid the claimed overtime and did not contest the determination that it had violated the CWHSSA. The plaintiff could have contested that determination: 1) within the Department of Labor (29 C.F.R. §§ 5.11(b), 5.12 (1981)); 2) before the Wage Appeals Board (29 C.F.R. § 7.9); or before the Contracting Officer, since the contract contained the liquidated damages statute, and the dispute arose under the contract (*see* 41 U.S.C. § 605(a)).

The Court can review the Commissioner's decision, but if his factual findings are based upon substantial evidence, they must stand.

### B. *Calculation of Damages*

The plaintiff alleges that the Commissioner miscalculated the damages because the work performed was not compensable under the CWHSSA, and because the time the employees spent was *de minimis.* Although the Court believes it lacks jurisdiction to decide the issues of compensability and *de minimis* work, the Court will discuss them.

### 1. *Compensability*

█ The CWHSSA requires employers to pay one and one-half times the basic rate of pay for "hours worked in excess of eight hours in any calendar day or in excess of forty hours in the workweek, as the case may be." 40 U.S.C. § 328(a). The Act does not define "hours worked," but courts have construed the CWHSSA as consistent with the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.,* and the Portal-to-Portal Act, 29 U.S.C. §§ 251 *et seq. See Masters v. Maryland Management Co.,* 493 F.2d 1329, 1332–33 (4th Cir.1974).

Section 7(a)(2) of the FLSA, 29 U.S.C. § 207(a)(2), entitles covered employees to overtime for hours worked in excess of forty per week. The FLSA applies only to work "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron, and*

*Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944).

The GSA required the plaintiff's employees to check their weapons in and out and sign in and out at a central office. Therefore, according to the plaintiff, the guards did this extra work primarily for the benefit of the Government, not for the benefit of Whelan. This argument has no merit. When Whelan's employees performed the GSA's requirements, they helped Whelan earn its contract fee. They reported to the central office, signed in, and obtained their weapons primarily for the benefit of Whelan. Whelan could have sought an equitable adjustment if it believed that GSA was demanding more than the contract required.

█ The Portal-to-Portal Act exempts the following activities from the FLSA pay standards:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities.

29 U.S.C. § 254(a)(1 & 2). Activities are preliminary or postliminary unless they are an integral and indispensable part of the work the employee was hired to perform. *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956).

The plaintiff has cited cases from other jurisdictions to show that it need not compensate employees for picking up equipment, returning it, and walking to their assigned posts. *See, e.g., Ciemnoczolowski v. Q.O. Ordnance Corp.,* 119 F.Supp. 793, 796–98, 801 (D.Neb.1954), *aff'd* 228 F.2d 929 (8th Cir.1955), *cert. denied* 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956). But the U.S. Court of Claims has decided otherwise. In a case similar to this one, the plaintiff asserted that the following · activities of its employees were preliminary and postliminary:

changing into and out of Government-furnished uniforms at designated locker points; making themselves neat and otherwise presentable before reporting for duty; drawing and turning in weapons and other equipment at designated control points; proceeding to and from locker rooms, control points, and assigned guard posts; and receiving any special instructions from the guard being relieved.

*Baylor v. United States,* 198 Ct.Cl. 331, 340 (1972). Assuming that the Portal-to-Portal Act applied to federal employees, the Court concluded:

the preliminary and postliminary activities involved here are so integral to the performance of the principal activity that the situs of these activities is the place of performance, and the principal activity for which the employee was employed has begun.

*Id.* at 337.

This Court finds that the CWHSSA required the plaintiff to compensate its employees for this extra work.

### 2. *De Minimis*

█ Even if employees have performed compensable work for more than 8 hours a day or 40 hours a week, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946), *reh'g denied* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (construing the FLSA). The plaintiff contends that its employees spent so little time fetching and returning weapons and walking to and from their posts that the CWHSSA should not apply.

The DOL, however, determined that the plaintiff's employees worked about 15 extra minutes per day. Extra work of 15 minutes per day is not *de minimis*. *See, e.g., Baylor,* 198 Ct.Cl. at 366 (more than 10 minutes not *de minimis*); *Albright v. United States,* 161 Ct.Cl. 356, 361 (1963) (15 extra minutes are compensable).

The plaintiff has submitted affidavits alleging that the DOL investigator never measured the time the guards required to check in and check out. The plaintiff's president and a guard captain measured that time with a stopwatch and contend that the guards worked an average of just over 4 extra minutes a day. Whelan argues that it could not violate the CWHSSA by failing to pay for 4 minutes of work a day.

The Court notes, however, that the DOL investigator reached his estimate of 15 minutes per day after interviewing Whelan's employees. Relying on that report and those interviews, the DOL found a violation, which the plaintiff did not contest. During the plaintiff's § 330(c) appeal, the Commissioner had to assume that the violation occurred. At this stage of review the Court is not at liberty to choose between differing versions of the facts.

## C. *Inadvertence*

This case arises out of the plaintiff's contract to provide protection and patrol services at the Internal Revenue Service Center in Memphis, Tennessee from May 1, 1980 to April 30, 1981. The plaintiff had already begun to perform a similar contract in Kansas City, Missouri. On March 17, 1980 a Wage-Hour Compliance Officer in Kansas City told the plaintiff's president that Whelan must pay its guards for checking their weapons in and out and walking to and from their posts. The Officer also warned that non-complying employers could be assessed liquidated damages or debarred from bidding on future contracts. The next day, Whelan was awarded the Memphis contract.

Whelan's president then asked the company's lawyer to research the issue. The lawyer advised him that Whelan need not pay its guards for checking their weapons in and out and walking to and from their posts. Relying upon that advice, Whelan did not pay overtime to its guards in Memphis. Meanwhile, Whelan had agreed to pay back wages to its guards in Kansas City. On March 1, 1982 the Commissioner found the Kansas City violations inadvertent and recommended waiving the liquidated damages.

On August 23, 1982 the Contracting Officer informed Whelan that the DOL had found violations in Memphis from May 1980 to June 1981. Because Whelan had been warned in March of 1980, the Contracting Officer considered the violations inexcusable.

In its appeal to the Commissioner, Whelan argued that its president had met with GSA and IRS officials in Memphis in April of 1980 to discuss the Memphis contract. According to Whelan, the government officials said that another guard service contractor with an identical contract had not paid its guards for checking weapons and walk time and that the government officials had not found the other guard service contractor's pay practices to be in violation of the law.

After receiving Whelan's allegation, the Commissioner asked the GSA's regional contracts administrator about the April 1980 meeting. On January 28, 1983, the administrator described what the government officials had told Whelan about the other contractor's practices:

> Because of problems of a similar nature which occurred under another contract with Sentinel Protective Services, Mr. Driver advised that GSA had no authority to permit employees to deviate from requirements enforced by DOL. Explanations of payment procedures provided the contractor were in accordance with DOL's interpretation....

On April 22, 1983, the Commissioner determined that Whelan's violations were not inadvertent. He affirmed the assessment of $62,740 of liquidated damages, which he later reduced to $15,685.

The plaintiff argues 1) that it exercised due care because it sought the advice of counsel (not the attorney of record here); and 2) that it was entitled to rely on the word of the GSA representatives.

■ In some situations, reliance on legal advice can insulate employers from liabili-

ty. *See, e.g., Hill v. J.C. Penney Co.,* 688 F.2d 370, 375 (5th Cir.1982). But reliance on counsel does not always establish due care. In an earlier suit construing a similar statute, the Court declared the law to be:

> that the advice and opinion of an attorney as to the applicability of the provisions of the Fair Labor Standards Act to the business of an employer ... is not in and of itself sufficient to establish "good faith" of the employer under Section 11 of the Portal-to-Portal Act of 1947.

*Gustafson v. Fred Wolferman, Inc.,* 73 F.Supp. 186, 197 (W.D.Mo.1947), *vacated and remanded on other grounds,* 169 F.2d 759 (8th Cir.1948). In this case, Whelan's reliance on counsel did not require the Commissioner to find the violations inadvertent.

Whelan also argues that GSA officials approved withholding the claimed overtime pay. The GSA contracts administrator denied Whelan's version of the meeting. The Commissioner believed the administrator, and found that the violations were not inadvertent. Substantial evidence supports this finding.

## CONCLUSION

By following the advice of counsel and failing to pay overtime of $3,321.21 the plaintiff incurred a penalty of $62,740. The Court can sympathize with the plaintiff's distress but cannot relieve it. The Commissioner recommended reducing the sum by three quarters, though he could find no reason in the statute, and the DOL accepted the recommendation, though it could have insisted on the full amount. Under the circumstances, the plaintiff is fortunate to have been assessed only $15,690. It is Congress that prescribed a penalty of $10 per violation per day. "Congress takes these violations very seriously for reasons which are at least understandable, and it is not our task to pass upon the wisdom of its enactments. Plaintiff had notice of the enactments it ran foul of in the contract it bid on." *Inland Service*

*Corp. v. United States,* 231 Ct.Cl. 974, 980 (1982).

Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. The Clerk will dismiss the complaint.