**COBRA CONSTRUCTION CO., INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 708–86C.**

United States Claims Court.

March 23, 1988.

---

Kenneth R. Plumb, Hartford, Conn., for plaintiff. Richard Voigt, Siegel, O'Connor, Schiff, Zangari & Kainen, P.C., of counsel.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Wendy Bader, Dept. of Labor, and Suzanne Bryant, E.P.A., of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment.

## FACTS

The following facts are undisputed. Cobra Construction Company, Inc., ("plaintiff"), a partnership specializing in large sewer projects, was awarded seven sewer construction and other water work between 1979 and 1981 by five Connecticut municipalities.[1] These projects were funded in part by grants to the municipalities from the Environmental Protection Agency (the "EPA"). Consequently, plaintiff's contracts incorporated provisions of the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327–333 (1982 & Supp. III 1985) (the "Act"). The Act requires contractors to pay their employees overtime compensation at one- and one-half times the basic hourly rate for work performed beyond 40 hours per week. 40 U.S.C. § 328(a).

During May 1982 James Peckham, a Compliance Officer with the Department of Labor (the "DOL"), initiated an investigation into plaintiff's compliance with federal labor standards laws, including the Act, and plaintiff's administration of its pension and profit-sharing plan. According to Mr. Peckham's September 14, 1982 Narrative Report, as of that time plaintiff was no longer engaged in active business due to a falling out between the two owners. Mr. Peckham found that payroll records from June 1979 to May 1982 were inaccurate.

---

1. The contracts were, as follows:

   1. EPA Project No. C090–174–01 with Waterford, Connecticut, for Central Waterford Interceptor. Construction dates: June 21, 1981—May 30, 1982.

   2. EPA Project No. C090–372–01, Contract 77–4C with Manchester, Connecticut for Upper Hockanum Sewer Extension. Construction dates: May 11, 1980—September 15, 1980.

   3. EPA Project No. C090–171–02, Contract 5 with Colchester, Connecticut, for Sanitary Sewers. Construction dates: June 29, 1980—May 10, 1981.

   4. EPA Project No. C090–171–02, Contract 3 with Colchester, Connecticut, for Sanitary Sewers. Construction dates: April 6, 1980—September 14, 1980.

   5. EPA Project No. C090–171–02, Contract 1 with Colchester, Connecticut, for Sanitary Sewers. Construction dates: July 29, 1979—March 30, 1980.

   6. EPA Project No. C090–324–01, Contract 2 with Berlin, Connecticut, for Belcher Brock Interceptor No. 2. Construction dates: October 28, 1979—April 13, 1980.

   7. EPA Project No. C090–256–01, Contract 21 with Vernon, Connecticut, for Sanitary Sewer No. 21. Construction dates: June 24, 1979—October 21, 1979.

**526**

The records stated that plaintiff's laborers, operators, and drivers began work at 7:30 a.m., but Mr. Peckham found that work often commenced at 7:10 a.m., based on statements from former employees; an interview with a Waterford, Connecticut policeman; inspection reports prepared by the sewer/water commission for the greater Hartford, Connecticut area; and his own observations at one work site. During this 35-month period, Mr. Peckham found that as pre-shift activities, operators and drivers would fuel and grease the equipment and laborers would load trucks, get tools and equipment on site, set up signs and barricades, and help out operators.

On September 13, 1982, Mr. Peckham held a final conference with two attorneys designated by plaintiff, William Judy and Lawrence Lissitzyn, to review his findings, specifically, his findings that plaintiff permitted employees to perform work without pay for approximately 20 minutes prior to the reported starting time and that time cards had been falsified. He advised that a hearing was possible before the DOL on the issue of liability. When questioned about the source of his information, Mr. Peckham's Narrative Report of September 14 notes his stating that he relied upon interviews with employees or non-employees, but that he could not disclose the nature of the evidence in detail. The Narrative Report shows that Mr. Peckham explained liquidated damages, noting that it was up to the EPA whether to assess them. Mr. Peckham also informed plaintiff's representatives of the method of computing back wages in order to give plaintiff an idea of the substantial sums involved and discussed computation of liquidated damages. The Narrative Report reflects the sum of $20,000.00 in back wages for 35 employees, which was the basis upon which plaintiff later settled the back wages claim. Plaintiff did not request administrative review of the DOL's findings as embodied in the Narrative Report. By letter dated October 18, 1983, plaintiff submitted a check to the DOL in the amount of $20,000.00 for 1979–1982 back wages, plus penalties. The DOL notified plaintiff by letter of May 18, 1984, that liquidated damages had been computed for each of the seven projects.

Thereafter, the EPA took on the dispute in order to determine whether liquidated damages should be assessed. By letter of June 11, 1984, the EPA's Office of Civil Rights (the "OCR"), issued a notice assessing the full $30,730.00 in liquidated damages based upon the DOL investigation. This figure was the product of $10.00 per day per employee for 3,073 violations. As defendant related the figure in argument, it equates to one year's work by 12 employees.

The OCR rescinded the assessment in order to review material submitted by plaintiff in a letter dated January 11, 1984. The letter set forth a comprehensive factual rebuttal to the charges that employees had been required to work prior to 7:30 a.m., including assertions that only foremen, separately compensated, performed set-up work; that all employees were paid above scale; and that disgruntled employees may have been the source of the information given to Mr. Peckham. On July 10, 1984, the OCR reissued its assessment without specifically responding to plaintiff's arguments.

Plaintiff appealed this decision to the EPA's Administrator by letter of August 21, 1984, and Louise Doberty Jacobs, an EPA Judicial Officer with the Office of the Administrator, was assigned to the matter. In a letter dated September 17, 1984, plaintiff protested the assessment procedures utilized as of that time:

At no time has Cobra Construction ever been given the opportunity to present evidence in the form of live testimony or sworn affidavits as to why the company had acted properly in this matter. At no time has Cobra Construction ever been given an opportunity to cross examine witnesses or otherwise test the credibility of those who may be claiming that liquidated damages should be assessed. It requires little comment that this procedural history does not approximate accepted notions of due process. Accordingly, we would reiterate our request for a hearing in order to present argument

and evidence as to why the assessment of liquidated damages in this case is not justified.

The Judicial Officer responded by letter of November 2, 1984, that the DOL determines violations of federal wage and hour provisions, computes the overtime due, and assesses damages against the contractor. The DOL also computes liquidated damages due based on a formula. The computation is forwarded to the EPA, whose OCR is charged by statute with assessing the damages. She explained that within the OCR's competence was the application of two exemptions from payment: miscomputation and inadvertence despite due care. Judicial Officer Jacobs concluded that the gravamen of plaintiff's appeal was contesting the violation and that the EPA lacked jurisdiction to conduct the hearing on the underlying violation.

Plaintiff contended by letter of November 27, 1984, that it only sought to prove that the violation was inadvertent despite its exercise of due care. Judicial Officer Jacobs issued an order on December 5, 1984, requiring, *inter alia,* the OCR to provide a statement of reasons for the assessment of liquidated damages and its response to plaintiff's request to review the DOL's investigation file. On December 14, 1984, the OCR issued a statement of reasons, citing plaintiff's past involvement in labor standards noncompliance investigations by DOL and information in Mr. Peckham's Narrative Report, including the DOL Compliance Officer's discussion of the computation of liquidated damages and the funding agency's responsibility to assess them. On December 17, 1984, plaintiff filed a brief, supplemented on January 4, 1985, with eight affidavits, time cards, and payroll summaries. No hearing was held, and the DOL's investigation file was not produced for plaintiff. The EPA's final decision was issued on February 7, 1985, assessing $30,730.00 in liquidated damages. *In re: Cobra Constr.,* No. 82–107–00072 (E.P.A. Feb. 7, 1985).

Suit originally was filed in this court on March 29, 1985, seeking relief from the assessment of liquidated damages. Judge Wood dismissed the complaint for lack of jurisdiction, pursuant to 28 U.S.C. § 1499 (1982), which establishes jurisdiction in this court to render judgment upon any claim for liquidated damages withheld from a contractor under the Act. *Cobra Constr. Co. v. United States,* No. 175–85C (Cl.Ct. Mar. 3, 1986) (unpubl.).

By letter dated September 8, 1986, plaintiff remitted the $30,730.00 assessment. Suit was filed again in this court on November 7, 1986, to recover the assessment.

## DISCUSSION

Section 328(a) of the Act requires employers to compensate at "a rate not less than one and one-half times the basic rate of pay, for all hours worked in excess of forty hours in the workweek," on any contract for work "financed in whole or in part by loans or grants from, ... the United States or any agency or instrumentality thereof." 40 U.S.C. § 329(a). Tasks performed as a prelude to the major objective of the contract constitute work if they are an integral and indispensable part of the work which the employees are hired to perform. *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956); *International Business Inv., Inc. v. United States,* 11 Cl.Ct. 588, 592 (1987) (pre-shift activities of security guards picking up and turning in weapons, holsters, and other equipment); *Whelan Sec., Inc. v. United States,* 7 Cl.Ct. 496, 499 (1985) (same). Plaintiff does not dispute that a violation occurred, but seeks review of the EPA's determination that the violation was either inadvertent, miscalculated, or *de minimis* as a matter of equity.

Enforcement powers under the Act are divided between two federal agencies. The DOL determines, pursuant to investigating powers granted by the Act to the Secretary, 40 U.S.C. § 330(a); 29 C.F.R. §§ 5.6, 5.11 (1984), if the Act's requirement for overtime compensation has been violated. When assessing back wages, the DOL also computes liquidated damages based upon a statutory formula applying the sum of $10.00 per date per employee for each violation. 40 U.S.C. § 328(b)(2); *see* § 330(c).

If the contractor disputes the investigatory findings, a written notice of such findings must be sent to the contractor. 29 C.F.R. § 5.11(a), (b)(1). The assessment of back wages must be paid within 30 days absent an election to appeal within the agency. 29 C.F.R. § 5.11(b)(2); *see* § 7.9. Unless a timely hearing is requested, the Secretary's findings becoming final. § 5.11(d). The calculation of liquidated damages is forwarded to the funding agency which is authorized to review the DOL's determination of liquidated damages and to affirm such determination by a final order or to recommend reduction in or relief from the assessment based on a finding that the sum assessed is incorrect or that the violation occurred inadvertently despite the exercise of due care on the contractor's part. 40 U.S.C. § 330(c).

Plaintiff's funding agency was the EPA and a Judicial Officer of that agency assessed the full amount calculated by the DOL. Final orders of the agency are "conclusive with respect to findings of fact if such facts are supported by substantial evidence." 40 U.S.C. § 330(c).

### 1. *Procedural due process*

■ Plaintiff argues that it was deprived of due process before the EPA. Plaintiff first contends that it never received a statement describing the basis for the assessment, *e.g.*, the basis for verifying the numbers in the DOL Narrative Report, the basis for concluding that 3,073 violations took place, the identities of the affected employees, or the amount of liquidated damages and time periods upon which they were calculated.

Compliance investigations must "include interviews with employees, which shall be taken in confidence." 29 C.F.R. § 5.6(a)(3). Disclosure of these files is limited:

> None of the material, other than computations of back wages and liquidated damages and the summary of back wages due, may be disclosed in any manner to anyone other than Federal officials charged with administering the contract or program providing Federal assistance to the contract, without request-

ing the permission and views of the Department of Labor.

It is the policy of the Department of Labor to protect the identity of its confidential sources and to prevent an unwarranted invasion of personal privacy. Accordingly, the identity of an employee who makes a written or oral statement as a complaint or in the course of an investigation, as well as portions of the statement which would reveal the employee's identity, shall not be disclosed in any manner to anyone other than Federal officials without the prior consent of the employee.

> Disclosure of employee statements shall be governed by the provisions of the "Freedom of Information Act" (5 U.S.C. 552, *see* 29 CFR Part 70) and the "Privacy Act of 1974" (5 U.S.C. 552a).

29 C.F.R. § 5.6(a)(4)–(5).

On December 5, 1984, Judicial Officer Jacobs ordered the OCR to provide plaintiff with a statement of reasons for the OCR's initial assessment. This statement, dated December 14, 1984, set forth both the factual basis and the computation of liquidated damages. The statement of reasons states that the investigation took place from June 16, 1979, through May 30, 1982, and that "deliberate incorrect recording of the actual time worked on the employees['] time card by the office manager with the knowledge of the foreman" was discovered, per the DOL Narrative Report. The statement explained how liquidated damages are computed and recomputed the assessment assigning the following amount to each project:

| Project No. | Liquidated Damages |
|---|---|
| C090–174–01—Waterford | $ 8,270 |
| C090–372–01—Manchester | 1,060 |
| C090–171–02, #5—Colchester | 5,710 |
| C090–171–02, #3—Colchester | 3,200 |
| C090–171–02, #1—Colchester | 5,080 |
| C090–324–01, #2—Berlin | 1,780 |
| C090–256–01, #21—Vernon | 5,630 |
| Total | $30,730 |

■ In essence, plaintiff argues that it had no opportunity to test the DOL's case on liability for back wages. Plaintiff is only partially correct on this point. The violation became a conclusive matter of record when plaintiff chose not to exercise

its appeal rights within the DOL; the opportunity to challenge the DOL's findings was forfeited at that time. The review of liquidated damages before the funding agency is a focused procedure that allows a contractor to present, or an agency to identify, *sua sponte*, mitigating circumstances that constitute either miscalculation or inadvertence. As defendant described the statutory framework, the DOL has the burden to establish that a violation occurred. However, once a violation of the Act is established, the Act mandates the assessment of liquidated damages, and the burden shifts to the contractor to make the showings that can relieve it from the assessment.

The background summarized in the statement of reasons ordered by the EPA's Judicial Officer gave plaintiff the process which it was due. The investigatory process established to implement the Act rests, in substantial part, upon information given in confidence. This information may be disclosed in sanitized form and becomes established if the violation is not contested before the DOL. Although plaintiff complains that it first saw Mr. Peckham's Narrative Report appended to defendant's moving brief of May 26, 1987, plaintiff was on notice at least by May 18, 1984, of the basis upon which liquidated damages were assessed and the amount of these damages. The OCR's statement of reasons identified the period during which the pre-shift activities of plaintiff's employees were observed and the amounts assessed at each project and thereby satisfies general notions of adequate notice for the liquidated damages assessment. The DOL had furnished plaintiff the same notice on May 18, 1984, before the matter was referred to the EPA.

Plaintiff also argues that it had a right of procedural due process to be heard on the assessment by way of oral argument or hearing. No such right is provided by the governing statute or regulations. *See* 29 C.F.R. §§ 5.1–5.17. *But see* 40 U.S.C. § 330(c) (the Secretary of Labor may conduct such investigations as he deems necessary if the funding agency recommends that an assessment be reduced or removed). However, the EPA Judicial Officer in her directive dated December 5, 1984, stated that any decision on granting either request would be deferred to allow plaintiff to brief its claim of a right to appear. Ms. Jacobs found no need for a hearing, and no right of appearance is provided for by statute or regulation. Thus, no due process right ever attached.

### 2. *Substantial evidence*

■ Plaintiff contends that the EPA's decision is not supported by substantial evidence. Substantial evidence " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

■ The EPA Judicial Officer's decision correctly assumed the presence of a violation. *See Whelan Sec.*, 7 Cl.Ct. at 498; *Richard E. Wilson Corp. v. United States*, 4 Cl.Ct. 171, 174 (1983). The Judicial Officer rejected both plaintiff's showings of inadvertence and miscomputation. First, the EPA rejected plaintiff's evidence on inadvertence:

Cobra's evidence of inadvertence consists of affidavits from officers of the firm, who said they believed the practices used on the site to be legal, and were unaware of unpaid work done by persons other than foremen during preparatory time.[3]

While it's possible that these statements reflect the officers' inadvertence, they negate exercise of due care. Due care would have led a firm of Cobra's standing and experience, represented by counsel, to be aware of the longstanding requirements of the law. It would also have made them aware of the widespread pattern of violation which the Department of Labor has found. The firm had been audited twice previously by the Department of Labor, which explained to it each time its overtime payment responsibilities. Overtime payment requirements

were set out in each of the contracts under which the work at issue was done.

In support of its claim of the second exemption, miscomputation, Cobra offers no affirmative reason to dispute its own earlier acceptance of the baseline used in the computation, or to dispute the DOL–OCR computation, which followed the statutory formula.

[3] Cobra's presentation also includes evidence which bears mainly on the question of violation, such as affidavits from three workmen, now employed by successors to the firm, who say they seldom or never observed preparatory work being done prior to starting time. Because the statements have at best peripheral bearing on the question of inadvertence, they have not been heavily weighed. In other affidavits, a former foreman speaks to the question of violation by saying that employees reviewed the time cards he prepared; and officers say they ordered that timecards be reviewed. While these statements could bear on officers' inadvertence if they are intended to prove that violations were being concealed from management, no motive is suggested for concealment, which appears contrary to interests of employees involved. It must be concluded therefore that these statements speak mainly to the question of violation, and were outweighed by contradictory evidence, when that question was being decided.

An opportunity to appeal denial of exemptions to penalties cannot be used as a second chance to contest the underlying violation. *Richard E. Wilson Corp. v. United States,* 100 LC ¶ 34,515, 4 Cl.Ct. 171 (1983).

*Cobra Constr.,* No. 82–107–00072, slip, op. at 2–3.

In regard to plaintiff's evidence supporting miscomputation, the EPA found that "Cobra offers no affirmative reason to dispute its own earlier acceptance of the baseline used in the computation, or to dispute the DOL–OCR computation, which followed the statutory formula...." *Id.,* slip op. at 3.

■ This court has reviewed plaintiff's affidavits and the EPA's analysis of them, along with plaintiff's other documentary evidence, and concludes that the EPA's decision took account of plaintiff's evidence and itself was based on substantial evidence. Plaintiff's evidence was directed more to contesting the plausibility that it violated the Act rather than substantiating a claim that its violation was due to inadvertence, such as in *Whelan Security,* 7 Cl.Ct. at 500, where the contractor argued that its reliance on advice of counsel should excuse the violation, or in *International Business Investments,* 11 Cl.Ct. at 592, where the contractor unsuccessfully relied on custom of the industry. *See also Richard E. Wilson Corp.,* 4 Cl.Ct. at 174. It is apparent that if plaintiff had the able assistance of its present counsel (who also made the presentation to the EPA) when the DOL was concluding its investigation, the result may have been different. However, plaintiff's showing before the DOL was virtually nonexistent, although the DOL Narrative Report reflects that plaintiff, by its legal representatives, had an opportunity to discuss the findings before the DOL concluded its investigation.[2]

### 3. *De minimis violations*

■ Equitable relief has also been requested by plaintiff.[3] "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded...." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515 (1946). Defendant argues that this equitable doctrine must have been raised before the DOL because its application "goes to the question of whether there has been an actionable violation of the Act." Def's Br. filed Sept. 4, 1987, at 4 (citation omitted). This is not true. "Equity eschews mechanical rules; it depends on flexibility...." *Holmberg v. Armbrecht,*

**2.** The disparity between the settlement of back wages ($20,000.00) and the liquidated damages ($30,730.00) is not so disproportionate as to be arbitrary or otherwise unreasonable. *See Whelan Sec.,* 7 Cl.Ct. at 497 (back wages of $3,321.21; liquidated damages assessment reduced on recommendation of funding agency from $62,740.00 to 15,690.00).

**3.** Even though plaintiff argued for de minimis equitable relief before the agency, the court has not reviewed the agency's conclusions under the substantial evidence standard. As the EPA Judicial Officer suggested in her opinion, adjustments other than those outlined in the statute are not cognizable before the agency. *See In re Cobra Constr.* No. 82–1070072, slip op. at 3. Thus, plaintiff's argument is considered *de novo.*

327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Moreover, "[e]quity does not demand that its suitors shall have led blameless lives...." *Loughran v. Loughran*, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219 (1934). The Claims Court has applied the *de minimis* doctrine to assessments of liquidated damages. *See International Business Inv.*, 11 Cl.Ct. at 593 (ten minutes or less per day to necessary pre- and post-shift activities is *de minimis*). *Whelan Security* is not to the contrary. The court simply held in that case that the length of the violation (15 minutes) was conclusive because it was not challenged before the agency, and the court affirmatively held that "[e]xtra work of 15 minutes per day is not *de minimis*." 7 Cl.Ct. at 499 (citations omitted).

Plaintiff argues that 15–20 minutes of extra work performed as part of a continuing work regimen is *de minimis*. The case law holds otherwise. *See, e.g., Baylor v. United States*, 198 Ct.Cl. 331, 366 (1972) (more than ten minutes not *de minimis*); *Albright v. United States*, 161 Ct.Cl. 356, 361 (1963) (15 minutes not *de minimis*).

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No costs.