**Cecil E. RIGGS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 131–89C.

United States Claims Court.

Oct. 23, 1990.

Ira M. Lechner, Washington, D.C., for plaintiffs.

Allen D. Bruns, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Stephen J. McHale, Washington, D.C., for defendant. Major Joyce I. Spisak, U.S. Air Force, and Wade Plunkett, Office of Personnel Management, of counsel.

## OPINION

BRUGGINK, Judge.

This action, brought under the Fair Labor Standards Act of 1938 ("FLSA") for overtime pay, is presently pending on the parties' cross motions for summary judgment. The parties' initial motions for summary judgment are limited to the question of liability. Plaintiffs' motion presents the apparently novel argument that certain regulations adopted by the Office of Personnel Management ("OPM") concerning the *"de minimis"* rule are fatally at odds

with regulations of the Department of Labor ("DOL") addressing the same subject. Defendant has subsequently moved to dismiss plaintiffs Cecil Riggs and Joseph Spalding on the independent ground that they are subject to collective bargaining agreements which call for resolution of their overtime disputes exclusively through grievance mechanisms. Defendant has also moved for summary judgment as to two other plaintiffs, Michael Delonjay and Jerry Chalker, on the ground that they are exempt by virtue of their positions from overtime pay protection. For the following reasons, the court concludes that defendant's motion to dismiss as to Riggs and Spalding should be granted, and that its initial motion for summary judgment is due to be granted as to the remaining plaintiffs.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are seven firefighters employed at Tyndall Air Force Base in Panama City, Florida from May 29, 1986 until the present time. They bring this action to recover back pay and liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201–219 (1988). All plaintiffs have been regularly scheduled to work 144 hours per 14 day period. As firefighters, plaintiffs are compensated for overtime as calculated pursuant to section 7(k) of the FLSA. In substance that section provides that the liability for overtime created by section 7(a) is limited, in the case of firefighters, to hours in excess of 216 hours within a four week period.[1] Plaintiffs normally receive 38 hours of overtime pay for each two week pay period. Plaintiffs' claim here is

that they have not been compensated for time spent attending roll call and transferring protective clothing.

Air Force Regulation ("AFR") 92–1 sets out the work tasks of plaintiffs' positions:

2–13. The Firefighter:

a. Maintains vehicle, equipment, tools and protective clothing in serviceable ready-response condition.

b. Responds to emergencies as required, suppresses fires, and takes precautions to prevent rekindling.

c. Exercises caution to avoid personal injury and property damage.

d. At the scene of a fire, protects and preserves evidence indicating the fire's cause.

e. Wears protective clothing and equipment as required.

f. Conducts recurrent proficiency training and OJT.

. . . .

On May 29, 1986, the base Fire Chief issued a written operating instruction, DE-FOI 11–1, designating the period from 7:00 a.m. until 7:00 a.m. the following morning as the 24 hour shift for firefighter operations personnel. Additionally, the operating instruction specified that roll call would be conducted at 6:55 a.m. each morning, and that it would be a "military type formation." The instruction recites that "The oncoming firefighters' protective clothing will be inspected by the assistant chief for operations for serviceability. The off-going shift will leave their protective clothing on their assigned vehicle until properly relieved." In addition, the Assistant Chief "will insure that personnel ... conform to the appropriate grooming standards."

---

1. 29 U.S.C. § 207(a) and (k) state in relevant part:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment ... at a rate not less than one and one-half times the regular rate at which he is employed.
. . . .

(k) No public agency will be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if—
. . . .
(2) in the case of such employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours ... bears to 28 days.

The oncoming shift would therefore have to be at the station at least five minutes before their regularly-scheduled shift commenced. On August 30, 1988, DEFOI 11-1 was reissued. The 24 hour shift was moved back five minutes so that it ran from 6:55 a.m. until 6:55 a.m. the following morning. Roll call was still held at 6:55 a.m. Plaintiffs have thus either been required to attend roll call five minutes before their shift began or at the end of their shift.

Protective fire resistant clothing is issued to each firefighter but remains government property. Pursuant to AFR 92-1 protective clothing is to be worn during an emergency, during fire suppression duties, in a danger area, and during training exercises. Each firefighter is required to keep the clothing in lockers located within the fire station. Firefighters are not permitted to take protective clothing home when not on duty.

From May 29, 1986 to the present, each firefighter on the oncoming shift has been required to obtain protective clothing from individually assigned lockers and place the clothing at a predetermined location before roll call. From May 29, 1986 to the present time, whenever he has been part of the outgoing shift of firefighters, each plaintiff has been required to transfer his protective clothing, either from his assigned vehicle or from the roll call site, to his locker after the end of the 24 hour shift. During roll call, the firefighters' protective clothing is inspected from time to time for serviceability and firefighters are inspected to insure that they conform to the appropriate grooming standards. Information essential to the proper conduct of the firefighters' mission is transmitted at roll call to the firefighters by either the Fire Chief, Deputy Chief, Assistant Chief, or ranking military NCO.

Plaintiffs contend that employees were threatened with disciplinary action after repeated lateness to roll call. Defendant offers Fire Chief John Stokes affidavit in which he recites that "there is no formal or military type of inspection of the civilian fire fighters uniforms or appearance held during roll call." This is at odds with DEFOI 11-1, however, which unequivocally states that firefighters are to appear at roll call and that this operating instruction is to be enforced by the Assistant Chief.

In his affidavit, Cecil Riggs recites that it takes, on average, two to three minutes for the oncoming shift to transfer protective clothing from lockers to the roll call site. No estimate was given for the amount of time it took to return protective clothing at the end of the 24 hour shift. Plaintiffs offer Riggs' affidavit "for illustrative purposes only," however, and not as an element of "proof." They reserve the right to offer evidence concerning the precise amount of time involved.

Defendant has moved for summary judgment as well, claiming that no factual issue exists with respect to the amount of time spent on preshift or postshift activities. It is sufficient for defendant's purposes, it contends, to demonstrate that the total time involved is 10 minutes or less. If that is the case, argues defendant, OPM regulations and this court's precedent preclude recovery.

Defendant answers the Riggs affidavit with those of John Stokes, the Fire Chief, and Alfred Savejas, Assistant Chief for Operations. They assert that prior to August 1988, at which time the shift was moved back from 7:00 a.m. to 6:55, it took a total of seven minutes to get gear and stand for roll call. It is not clear whether this includes the "one or two minutes" it took to return gear, but in any event, the maximum time for both preshift and postshift activities would be nine minutes. They assert that the maximum amount of time spent on preshift and postshift activities after August 1988 is seven minutes. Plaintiffs did not respond to these assertions.

Prior to December 21, 1987, the Air Force Civilian Pay System was not designed to readily accept overtime in less than 15 minute increments. Shorter intervals had to be input manually, and capturing the times claimed would, according to Captain Alan Lynch, Chief of Accounting and Finance at Tyndall, have required four or five hours of additional manual data

entry. After December, 1987, the system was redesigned to accept optically scanned overtime increments of one minute. Because overtime has never been allowed in such increments at Tyndall, the program has not been tested.

### B. The Issue

Plaintiffs claim they are entitled to be paid at an overtime rate both for roll call attendance, and for time spent retrieving and returning protective clothing. Defendant contends that such periods of time are noncompensable for two reasons. First, it argues that the two activities at issue are not work. Second, it contends that even if they are, 5 C.F.R. § 551.412(a)(1) precludes payment for preshift or postshift activities of 10 minutes or less duration.

■ The Fair Labor Standards Amendments of 1974 ("1974 Amendments"), Pub.L. 93–259, 88 Stat. 55 (April 8, 1974), made the FLSA applicable to the federal government. 29 U.S.C. § 203(e)(2). After the 1974 Amendments, federal employees have been able to pursue overtime claims under either FLSA or the Federal Employees Pay Act of 1945 ("FEPA"), 5 U.S.C. §§ 5541–5549 (1988). Concurrent with the 1974 Amendments, Congress gave the Civil Service Commission (now the OPM), authority to administer the FLSA with respect to federal employees. 29 U.S.C. § 204(f). Consequently, there are parallel overtime regulations under both FEPA and FLSA.[2] As plaintiffs correctly caution, the regulations adopted concerning overtime pay under FEPA are not, therefore, directly relevant to this claim, which is brought exclusively under the FLSA.[3]

The legislative history of the 1974 Amendments reflects a desire by the Congress that OPM administer the FLSA for federal employees so as to "assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 2811, 2837. Plaintiffs' underlying contention is that OPM and the Air Force have adopted regulations pursuant to the 1974 Amendments that thwart this desire for consistency. Specifically, they contend that OPM has subjected them to a "de minimis" rule by which they must exceed a threshold of 10 minutes of preshift or postshift overtime before they become entitled to compensation. They contend that the same rule would not apply to them if they were in the private sector, and that this inconsistency is violative of the 1974 Amendments.

For the following reasons, the court concludes that the activities in question are compensable, but only if they are not de minimis.

### II. JURISDICTION

■ Defendant's motion to dismiss the claims of plaintiffs Riggs and Spalding is well-taken. These two plaintiffs have been members of a collective bargaining unit at Tyndall Air Force Base throughout the period of time at issue. The scope of the agreement is set out at Article XX. In part, that article provides: "This negotiated grievance procedure shall apply to matters of concern or dissatisfaction regarding the interpretation, application or violation of law, regulations, or this agreement...." The Federal Circuit has held that the exclusivity of collective bargaining agreements, as dictated by 5 U.S.C. § 7121(a) (1988), means that an agreement must specifically exclude FLSA overtime issues for those disputes not to be limited to negotiated grievance procedures. Carter v. Gibbs, 909 F.2d 1452, 1455 (Fed.Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990).

The court rejects plaintiffs' arguments that the scope of the agreement does not

---

**2.** Compare 5 C.F.R. §§ 550.111–550.114 (1990) with 5 C.F.R. §§ 551.501–551.541 (1990). As firefighters, plaintiffs receive standby premium pay under 5 U.S.C. § 5545. This makes them ineligible, under FEPA, to receive overtime pay for regularly scheduled overtime work. See 5 U.S.C. § 5542.

**3.** But see discussion supra at 682.

embrace the present dispute, and, alternatively, that the dispute is specifically excluded. The scope of the agreement, as expressed in the provision quoted above, could not more plainly cover the present dispute.[4] Plaintiffs suggest that the present dispute is excluded, in part, because the agreement excludes from the definition of the term, "conditions of employment," matters specifically provided for by federal statute. However, plaintiffs overlook that the scope of the agreement goes beyond conditions of employment. Moreover, FLSA disputes are not within those matters specifically enumerated as exclusions.[5] *See also Ackerman v. United States*, 21 Cl.Ct. 484 (1990); *Adams v. United States*, 20 Cl.Ct. 542 (1990).

## III. DISCUSSION

### A. The Applicable Legal Standard

The Supreme Court has held that the "workweek" contemplated in section 7(a) of the FLSA includes all time during which an employee is necessarily required to be on the employer's premises on duty or at a prescribed work place. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). In that decision, the Court held that time spent punching in, walking to the particular work location, and in doing preliminary tasks was compensable working time. *Id.* at 690–91, 66 S.Ct. at 1194–95. Prompted by the *Mount Clemens* decision, Congress passed in 1947 the Portal To Portal Act. 61 Stat. 84 (May 14, 1947) ("Portal Act"), 29 U.S.C. § 254 (1988). Section 4(a) of the Portal Act excepts the following from the reach of the FLSA: "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). The Portal Act thus sets up two categories of activities, those that are "principal" and those that are "preliminary or postliminary." An employer does not have to compensate for the latter.

DOL regulations do not provide a precise definition of what constitutes "principal activities." Instead, a number of descriptors and examples are used at 29 C.F.R. § 790.8 which are drawn from cases or from legislative history. They recite, for example, that principal activities are those which an employee is employed to perform.[6] They are not, however, limited to those activities

---

**4.** Plaintiffs' reliance on Section 3 of Article XX, which deals with "APPLICATION" of the agreement, would not seem to limit that scope in any relevant way. The first sentence of that section is not a model of clarity: "A grievance may be undertaken ... over the interpretation, application or violation of any matter contained in this agreement, but which concerns published agency policy, working conditions, and environment...." If, as plaintiffs seem to suggest, this is a limitation on Section 2, then that portion of Section 2 which states that the grievance procedures "apply" to matters concerning the application or violation of law or regulations is eliminated. Reading the two sections together, a matter that concerns the application or violation of law or regulation would also have to "concern" published agency policy. The present dispute does. Similarly, reliance on Article VII, which incorporates rights "established by law [or] statute" does not assist plaintiff. The court in *Carter* was interpreting section 7121 when it dismissed the claims in that suit. Plaintiffs' circular argument does not take account of the fact that the "law" requires the parties to adopt a specific exclusion to avoid the presumption in favor of the grievance process.

**5.** Plaintiffs express concern that an arbitrator would be unable to address the merits of their claims. They are correct that the role of an arbitrator is to interpret and enforce the agreement. This particular agreement, however, specifically covers "matters of concern ... regarding the interpretation, application or violation of law...." Even if the arbitrator had no authority to overturn a regulation as being inconsistent with the FLSA, those issues would appear to be preservable for an appeal through the Federal Labor Relations Authority to the various courts of appeal. *See* 5 U.S.C. §§ 7122, 7123. The court notes that, in any event, this is a phenomenon that appears to be inherent in application of *Carter*.

**6.** Reference is made in the regulations to *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Both cases involved firefighters for meatpacking companies. The issue was whether time spent waiting for emergencies or other tasks could count toward overtime hours. The court held that it could. Without establishing a particular litmus test, the Court's discussion makes plain that the relevant inquiry is highly fact-specific and focuses on the employer's purpose in engaging the employee.

which an employee predominantly performs. Moreover, "[t]he term 'principal activities' includes all activities which are an integral part of a principal activity." 29 C.F.R. § 790.8(b). Two examples are provided of what is meant by an integral part of a principal activity:

(1) In connection with the operation of a lathe an employee will frequently at the commencement of his workday oil, grease, or clean his machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.

(2) In the case of a garment worker in a textile mill, who is required to report 30 minutes before other employees report to commence their principal activities, and who during such 30 minutes distributes clothing or parts of clothing at the work-benches of other employees and gets machines in readiness for operation by other employees, such activities are among the principal activities of such employee.

The definition of preliminary and postliminary activities provided in the DOL regulations is not very helpful since those activities are referred to as ones engaged in before or after principal activities. See 29 C.F.R. § 790.7. The examples provided in the regulations do give some flesh to the terms, however. In addition to multiple examples of non-compensable time related to transportation, the following activities are also excluded from principal activities: checking in and out and waiting in line to do so, changing clothes, washing or showering, and waiting in line to receive paychecks. Id. § 790.7(g). These regulations are an attempt to capture decisional law. Some of the key cases are discussed below.

In McComb v. C.A. Swanson & Sons, 77 F.Supp. 716, 720–21 (D.Neb.1948), the court was asked to rule that the time spent by employees in a poultry packing house changing into and out of required smocks and uniforms was not preliminary and postliminary under the Portal Act. The employees would arrive before their scheduled shift and, in a designated area, change into the company uniform. After their shifts,

the workers would reverse the process. Both procedures took about five minutes each. The court found that prior to the Portal Act the time would have been compensable under Mount Clemens, but that the activities in question fell clearly into the category of preliminary and postliminary activities. The court gave examples of activities that would be principal: "For the machinist it is the work at his bench or lathe; for the store clerk, the sale of goods; for the carpenter the labor in the erection or repair of a building." McComb, 77 F.Supp. at 731–32. The court went on: "Derivatively, 'preliminary activities,' in the present setting, are those activities which are engaged in before the threshold of, or the entrance upon, the day's principal activities." Id. at 732. For the chicken eviscerator, the principal activity was the slaughter, dressing and cleaning of chickens. Putting on smocks and cleaning up after the shift did not, from the court's perspective, constitute the principal work for which the employees were hired. The decision also advances an alternative holding. The court points out that Mount Clemens established that the maxim, de minimis not curat lex, is applicable to consideration of FLSA overtime questions. The district court went on to hold that the time before and after principal activities was de minimis, and therefore non-compensable. In another early case construing the Portal Act, Redwitz v. Ford Motor Co., 80 F.Supp. 265, 265–66 (W.D.Ky.1948), plaintiffs were denied overtime compensation for time spent changing into and out of uniforms, and obtaining and returning required equipment, reports and orders.

The Fourth Circuit, in E.I. Du Pont De Nemours & Co. v. Harrup, 227 F.2d 133 (4th Cir.1955), held that cashiers did not have to be compensated for reporting to work sufficiently in advance of their shifts to receive and count the sum of $200 and to receive information from the outgoing cashier. It was of significance to the court that there was no requirement to report for 10 minutes before the shift began, as the trial court had found. Instead, the precise requirement supported by the record was that the oncoming cashier had to be

present in sufficient time before the new shift began in order to have their station ready when the cafeteria reopened. No report was kept of the precise time of arrival, and there was no discipline for being late. As in *McComb*, the court alternatively held that the preliminary activities were "so insignificant and of so short a duration as to fall within the classification of de minimis...."

In *Mitchell v. Southeastern Carbon Paper Co.*, 228 F.2d 934, 938–39 (5th Cir. 1955), the Fifth Circuit held that time spent changing and bathing was preliminary and postliminary to employees' principal activity even though they worked with carbon ink. The non-shift time was for the convenience of the employees more than that of the employer. The workers did not contact dangerous chemicals, and there was no particular dress requirement.

The Supreme Court spoke to the issue again in 1956 in *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267, and announced a category of preliminary or postliminary activities to which overtime pay provisions did apply. The employees in *Steiner* worked in a battery plant. Their work called for extensive use of dangerously caustic and toxic materials. The Court noted that they were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id.* at 248, 76 S.Ct. at 331. The Court began its analysis by pointing out that normally such activities as changing clothes and showering are preliminary or postliminary and thus excluded from compensable work time. The safety and hygiene activities at issue had "become a recognized part of industrial hygiene programs in the industry," however. *Id.* at 250, 76 S.Ct. at 332. The time spent in these activities was 10 minutes in the morning and 20 minutes in the afternoon. The Court adopted as its own holding the conclusion of the trial court that the activities were compensable because they were made "necessary by the nature of the work performed" and were "so closely related to other duties performed by [petitioners'] employees as to

be an integral part thereof." *Id.* at 252, 76 S.Ct. at 333. The Court adopted as a rule the following construction of the Portal Act: "[Congress] did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an integral part and indispensable to their principal activities." *Id.* at 255, 76 S.Ct. at 335.

On the same day it announced *Steiner*, the Court issued its opinion in *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956), holding that the knife sharpening activities of butchers in a meat packing plant were an integral and indispensable part of their principal activities.

In *Nardone v. General Motors, Inc.*, 207 F.Supp. 336, 339 (D.N.J.1962), the district court found that the following activities were not integrally related to the work of metal finishing in an automobile assembly plant: changing clothes; obtaining tools from a tool box located next to the assembly line; obtaining new tools from the foreman; putting on coveralls, gloves, and other gear; putting away tools; and showering at home. Although it found that the activities in question were not work time, the court went on to hold that even if they were, they were *de minimis* and thus not compensable. The evidence in that case suggested that although the time was consistently spent, it never amounted to more than about six minutes per day.

In 1970, the district court in *Carter v. Panama Canal Co.*, 314 F.Supp. 386 (D.D.C.1970), *aff'd*, 463 F.2d 1289 (D.C.Cir.1972), was confronted with an overtime pay claim under FEPA. The employees were seeking compensation for time spent walking on government premises from an assignment board to the locomotive to which the worker was assigned for the day. The time consumed ranged from two to 15 minutes; the average was eight minutes. While on government premises, the workers were subject to discipline for breach of various rules. In determining whether the activities were covered by the FEPA, the court looked to relevant provisions of the FLSA and the Portal Act and cases thereunder. It concluded that the work was not an

"integral part of and indispensable to" the principal activity of operating a locomotive. *Id.* at 391. "The activity is as much for the benefit of the employee as it is for the employer. Without passing an assignment board the operators would run the risk of not being on time at their locomotives." *Id.* Because the amount of time involved was "insubstantial and insignificant," plaintiffs were alternatively defeated by the *de minimis* rule. *Id.* at 392 (citing *Mount Clemens*, 328 U.S. at 693, 66 S.Ct. at 1195).

The Fifth Circuit had occasion to speak to the effect of the Portal Act again in *Dunlop v. City Elec., Inc.*, 527 F.2d 394 (5th Cir.1976). The workers involved there were employed by an electrical subcontracting firm to install electrical wiring. Before their regular shift began at 8:00 a.m., the employees were required to have completed certain tasks: filling out time sheets, filling out material requisition sheets, checking job locations, cleaning trucks, loading trucks, fueling trucks, and picking up electrical plans for the day's work. Based on its review of decisions after the Portal Act,[7] the court took what it termed a "broad" view of the term "principal activities" and a narrow view of excepted preliminary activities, and concluded that the activities at issue were compensable. It included within covered activities those that were "incidental" to principal ones. *Id.* at 400. It is noteworthy that the court remanded for a determination of whether the time spent on these otherwise compensable activities was *de minimis*. *Id.* at 401.

In *Lindow v. United States*, 738 F.2d 1057 (9th Cir.1984), the Ninth Circuit found that reviewing a log book and exchanging information by employees of the Army Corps of Engineers were necessary and integral parts of the employees' principal activities. (The employees were power plant operators, control room operators and general foremen of eight hydroelectric dams.) However, the court did not count the approximately seven minutes a day spent engaged in these activities as compensable because these activities could have been performed during the regularly scheduled shift and were not required to be performed prior to this time. *Id.* at 1061. The court found that the Corps did not pressure or even encourage the workers to report early. *Id.* at 1062. The Corps did not reprimand, dock, or give a poor evaluation to any employee for not reporting early. *Id.* at 1062.

Although *Lindow* involved federal employees, the action was brought under the FLSA and not under FEPA. As a matter of first impression for the Ninth Circuit, the court had to decide whether to apply a *de minimis* exclusion. The court held that the rule did apply in FLSA cases in that circuit after exhaustively exploring the application of the rule in other circuits. It reached the conclusion that, in determining whether otherwise compensable time is *de minimis*, "we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Id.* at 1063. The court found that the plaintiffs' claims in that case were *de minimis*. There had been no consistent policy in the Corps of Engineers to pay overtime for less than 15 minutes work. There was a wide variance in the amount of preshift time spent on compensable activities as opposed to social activities. "Although plaintiffs' aggregate claim may be substantial, we conclude that their claim is *de minimis* because of the administrative difficulty of recording the time and the irregularity of the additional pre-shift work." *Id.* at 1064.

The court in *Lindow* had before it 29 C.F.R. § 785.47 which was adopted in 1961. That regulation of the DOL, which deals with recording time spent on principal ac-

7. *E.g., Secretary of Labor v. E.R. Field, Inc.*, 495 F.2d 749, 751 (1st Cir.1974) (any work of consequence to the employer should be compensated); *Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283, 287 (5th Cir.1969), *cert. denied,* 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970) (exempt activities cannot benefit the employer); *Jackson v. Air Reduction Co.*, 402 F.2d 521, 523 (6th Cir.1968) (only those activities predominantly spent in the employees' own interests are exempt).

tivities, provides that insubstantial or insignificant periods of time beyond scheduled work hours which cannot, as a practical matter, be precisely recorded do not add to overtime hours. That same provision goes on, however, to state that "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular work time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."

The *de minimis* rule described in *Lindow*, therefore, was drawn, not only from numerous decisions flowing out of *Mount Clemens*, but also from section 785.47. That is of importance, because, as will be discussed *supra*, plaintiffs contend that the *de minimis* rule applied by the Air Force in this action, is inconsistent with the DOL regulation.

This court and its predecessor court have also had occasion to address overtime pay claims under both FLSA and FEPA. Suits brought prior to 1974 perforce could only be predicated on FEPA. One such case is *Albright v. United States*, 161 Ct.Cl. 356 (1963). There, guards at the Norfolk Naval Shipyard sued to recover overtime pay for 20 minutes of time before their shift commenced. Fifteen minutes of that period was prompted by official edict.[8] Five minutes was occasioned, as the court found, by "tacit expectation" rather than order. The time in question was spent standing at muster for attendance, inspection, and instructions. With very little discussion of the applicable law, the court found that plaintiffs should be compensated at overtime rates for 15 minutes per day.

*Baylor v. United States*, 198 Ct.Cl. 331 (1972), was also brought under FEPA. The plaintiffs in that case were uniformed General Service Administration building guards. The preshift activities for which they sought compensation were the following: changing into and out of government-furnished uniforms at designated locker points; making themselves neat before re-

porting for duty; drawing weapons and other equipment; walking to their duty stations; and receiving any special instructions from the guard being relieved. Applicable rules dictated that guards report for duty a few minutes early to receive instructions and ensure timely transition. A similar claim was made for postshift activities. Guards were required to report in uniform but were unable to take their uniforms and equipment home. Consequently, they had to spend time at the worksite changing into uniforms. The guard handbook called for a brief uniform and appearance inspection. The court held that, with respect to those guards who testified, the average maximum time spent on preshift and postshift activities was 26 minutes.

The Court of Claims held in *Baylor* that the Portal Act had no application to federal employees. *Id.* at 337. (This was prior to the 1974 Amendments.) That ruling had no effect on the outcome of that case, however, because the court also found that the "preliminary and postliminary activities involved here [were] so integral to the performance of the principal activity that the situs of these activities [was] the place of performance, and the principal activity for which the employee was employed ha[d] begun." *Id.* "These presentable-at-appearance-in-uniform and standing-of-inspection and being-armed requirements were so much in the interest of the employer that the guards' performance of these functions were necessary to and directly connected with their duties as guards." *Id.* at 337–38.

*Graham v. United States*, 3 Cl.Ct. 791, 795 (1983), *aff'd mem.*, 758 F.2d 663 (Fed. Cir.1984), was brought under the FLSA. The circumstances in that case, although not identical to those in this case, are similar. Plaintiffs were firefighters for the United States Army at Fort Bliss, Texas. They worked alternating 24 hour shifts and were required to appear for roll call at the beginning and end of their shifts. The firefighters were required to appear for both roll calls in uniform. The practice

---

**8.** The issue under 5 U.S.C. § 5542(a) is whether "hours of work" were "officially ordered or ap-

proved." *See also Bates v. United States*, 196 Ct.Cl. 362, 450 F.2d 886 (1971).

was that the workers changed into their uniforms at home and typically received information pertinent to the oncoming shift prior to roll call. Plaintiffs in that case primarily relied on 29 U.S.C. § 254(b) which creates an exception to the overtime pay exclusions set out in section 254(a). It applies when there is a contract provision or demonstrable custom or practice in effect under which otherwise non-compensable time is treated as compensable. After finding that no such contract provision, custom or practice existed, the court went on to consider whether the firefighters performed "a substantial amount of labor in the interest of the Government" during time outside regularly prescribed hours of duty. *Graham*, 3 Cl.Ct. at 795. The court concluded that the eight to 15 minutes required to change into and out of uniform was not compensable, and was in any event *de minimis*.[9]

In *Whelan Security Co. v. United States*, 7 Cl.Ct. 496 (1985), the court was called upon to apply FLSA precedent in a case brought by a government contractor to recover liquidated damages assessed under the Contract Work Hours and Safety Standards Act ("CWHSSA"), 40 U.S.C. §§ 327–333 (1982). The company had been assessed for failing to pay for 15 minutes spent by guards to pick up and then return weapons and other equipment before and after their shifts. Citing *Baylor*, the court sustained the damages. It also found that 15 minutes was not *de minimis*. 7 Cl.Ct. at 499–500. Another action involving CWHSSA is *IBM v. United States*, 11 Cl.Ct. 588 (1987). There the court found that 30 minutes spent traveling between the place at which security guards picked up weapons and where they reported for duty was compensable time. The court found that the 10 minutes spent traveling to and from a different building for the same purpose, however, was *de minimis*. The court observed that "the extant case

law seems to establish that a period of 10 minutes or less per day devoted by an employee to necessary pre-shift and post-shift activities is *de minimis*." *Id.* at 593 (citing *Lindow*, 738 F.2d at 1057); *Bantom v. United States*, 165 Ct.Cl. 312 (1964); *E.I. Du Pont De Nemours & Co.*, 227 F.2d at 133; and *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir.1949).[10]

In a more recent case brought pursuant to the FLSA, this court found that certain activities of cook foremen were not preliminary or postliminary. *Amos v. U.S.*, 13 Cl.Ct. 442 (1987). These activities included picking up keys, a radio, and a body alarm as the foremen passed through a control room on their way to their work sites and later reversing this process. *Id.* at 448. The court went on to apply the *de minimis* rule and found that disputed facts precluded summary judgment. *Id.* at 450.

OPM has issued numerous regulations and other guidance pursuant to the 1974 Amendments in an effort to distinguish principal activities from those that are non-compensable. For example, 5 C.F.R. § 551.411 provides that "All time spent by an employee in the performance of [principal] activities is hours of work." Section 551.412 refers to "Preparatory or concluding activities." That section in effect creates two sub-categories of preparatory or concluding activities:

> (a)(1) If an agency reasonably determines that a preparatory or concluding activity is closely related to an employee's principal activities, and is indispensable to the performance of the principal activities, and that the total time spent in that activity is more than 10 minutes per workday, the agency shall credit all of the time spend in that activity, including the 10 minutes, as hours of work.
>
> . . . .
>
> (b) A preparatory or concluding activity that is not closely related to the performance of the principal activities is

9. Apparently the plaintiffs were not seeking compensation for time spent either for roll call or in receiving instructions.

10. *Bantom* predates the application of the FLSA to federal employees and thus speaks only to the FEPA. In *Bantom*, five minutes spent getting guns and going to roll call was found to be *de minimis*. To like effect is *Ahearn v. United States*, 142 Ct.Cl. 309, 312 (1958) (*de minimis* rule recognized).

considered a preliminary or postliminary activity. Time spent in preliminary or postliminary activities is excluded from hours of work and is not compensable, even if it occurs between periods of activity that are compensable as hours of work.

Air Force Regulation ("AFR") 40–610 ¶ 8 deals with "Make Ready and Clean Up Time." It provides:

> Incidental duties that are directly connected with the performance of a job, such as obtaining and replacing working tools or materials, undergoing inspections, and similar tasks are considered part of the job requirements within the established tours of duty. When work shifts overlap, the shifts will be arranged so that time required for incidental duties will be part of the 8–hour day. When incidental duties cannot be made part of the regularly scheduled workday, the extra time for which overtime is payable, will not exceed 30 minutes a day.

The Government concedes that attendance at roll call appears to be an incidental duty "directly connected with the performance of [plaintiffs'] job," but contends it is not a principal activity. The Government points to OPM Federal Personnel Manual ("FPM") Supplement 990–2 which defines principal activities as those "that an employee is employed to perform. They are the activities that an employee performs during his or her regularly scheduled administrative workweek...." FMP Supplement 990–2 ¶ S1–3 (Sept. 26, 1983) (hereafter, "FPM 990–2"). The supplement also repeats the exception present at 5 C.F.R. § 551.412(a)(1) for preparatory activities "closely related" and "indispensable" to principle activities, so long as they exceed 10 minutes. Appendix I to FPM 990–2 then goes on to clarify that no *de minimis* rule applies to time spent on "assigned duties." It further extracts from FPM 990–2 the following test for assessing whether preshift and postshift activities are compensable as hours of work:

(a) Is the Activity Considered Work? If the activity is required by the agency and is closely related to the employee's principal activities, and indispensable to their performance, the activity is considered work.

(b) Does the Activity Involve a Substantial Amount of Time and Effort? If the total time spent in the activity will be more than 10 minutes per day, it is credited as hours of work.... Time spent in preliminary or postliminary activities shall not be included.

OPM and DOL regulations therefore are largely identical in effect in that OPM regulations treat what are referred to as preparatory activities "closely related" and "indispensable" to principal activities in the same way that DOL regulations treat "principal activities." They also agree that no *de minimis* rule applies as to assigned duties, if those are considered limited to activities an employee was hired to perform. The distinction comes in treatment of OPM's recognition of a class of "preparatory" principal activities of 10 minutes or less duration. OPM and Air Force impose a "minimum time" criteria with respect to those preshift or postshift activities that are not principal activities themselves, but are closely related and indispensable to activities that are considered activities an employee was hired to perform. The DOL regulations, on the other hand, do not expressly recognize such a limitation.

Two decisions of the Comptroller General also bear mention at this point.[11] The most recent, 60 Comp.Gen. 523 (1981), involved a claim by security guards for 15 minutes of preshift activities which included obtaining weapons and going through a roll call. The opinion finds that only seven and one half minutes was actually spent by each guard in preshift activities. The claim was advanced under both the FEPA and the FLSA. The Comptroller General concluded that those guards limited to a recovery under the FEPA were not entitled to compensation because of the *de minimis* doc-

---

11. Decisions of the Comptroller General are not binding on the court, but may be of persuasive value.

trine: "The Court in *Baylor* held that preshift 'hours of work' had to exceed 10 minutes per day or such work could be disregarded as being *de minimis, Baylor* at 365. This *de minimis* rule has been uniformly applied in decisions of this Office." *Id.* at 526. With respect to persons eligible to recover under the FLSA, however, that limitation was not seen as a bar. "Unlike overtime entitlement under title 5, United States Code, the *de minimis* doctrine is not applicable to compensation under the FLSA for regularly scheduled overtime work." *Id.* at 528. Accordingly, the latter employees were able to recover for the seven and one half minute period. Defendant contends that this analysis is incorrect with respect to the FLSA.

The Comptroller General's opinion refers to FPM Letter 551–6 to support the conclusion that the *de minimis* rule is nonapplicable. The letter in question recites, "The courts have also ruled that an employer may not fail to count any time, however small, an employee is regularly required to spend on duties assigned to him. Therefore, the employee must be compensated for every minute of *regularly scheduled* overtime work." FPM Letter 551–6 Attachment 2, ¶ A.2 (emphasis in original).

An earlier opinion, 44 Comp.Gen. 195 (1964), involved building guards who reported 15 minutes before their shifts commenced to obtain weapons and attend roll call. Weapons were drawn on premises. At roll call, the guards received specific assignments and instructions. Citing *Albright*, 161 Ct.Cl. at 356, the opinion concluded that the preshift activities of those guards were compensable.

Having identified the applicable law, it remains to apply that law to the present facts, and in that process, determine if the government rules and regulations impermissibly deviate from FLSA precedent in the private sector.

B. Application of the Legal Standard

1. *Were plaintiffs engaged in principal activities?*

■ There are two separate elements of plaintiffs' claim: time spent getting protective equipment and time spent in roll call. It is defendant's initial contention that both activities are preliminary or postliminary within the meaning of the Portal Act, and that thus they need not be compensated as principal activities. Defendant points by way of explanation to an OPM regulation concerning computation of fractional hours of overtime:

> As preshift/postshift activities are not the principal activities of an employee's position, they cannot be regularly scheduled overtime work, even if they are performed on a regular basis. Therefore, the requirement that an employee must be paid for every minute of regularly scheduled overtime work does not apply to preshift/postshift activities.

48 Fed.Reg. 36,803–01 (1983).

As discussed more fully below, it is the court's view that this regulation correctly discerns a distinction in the decisional law between principal activities that are compensated because they are closely related to the actual duties of the job, and the principal activities that are the job duties themselves. The court finds that neither roll call attendance or retrieving protective clothing can be viewed as the activity which plaintiffs were "employed to perform." 29 C.F.R. § 709.8 (citing, *Armour & Co.*, 323 U.S. at 132–34, 65 S.Ct. at 168–69); *Skidmore*, 323 U.S. at 136–37, 65 S.Ct. at 162–63; *see also* 5 C.F.R. § 551.411 ("activities that an employee is engaged to perform, on a given day"); *McComb*, 77 F.Supp. at 731–32. AFR 92–1 enumerates those tasks plaintiffs were obligated to perform. Appearing at roll call, with or without protective clothing is not listed. It follows that plaintiffs do not fall within the coverage of FPM Letter 551–6, Attachment 2, ¶ A.2 because attendance at roll call and getting protective clothing was not part of assigned duties.

■ That is not fatal to plaintiffs' claim, however, so long as these activities are "an integral"[12] or "indispensable part"[13] of the

---

12. 29 C.F.R. § 709.8; *see Baylor*, 198 Ct.Cl. at 337; *Nardone*, 207 F.Supp. at 339.

13. *King Packing Co.*, 350 U.S. at 263, 76 S.Ct. at 339; *Dunlop*, 527 F.2d at 400; *Carter*, 314

activity for which they were hired, or are "closely related" to those activities,[14] or are "made necessary by the nature of the work performed."[15]

Plaintiffs must, *inter alia*, wear protective clothing as required, and maintain it in a "serviceable ready-response condition." AFR 92–1, ¶ 2–13. The Air Force chooses to enforce that element of plaintiffs' work, at least in part, during roll call. DEFOI 11–1 warns the firefighters that roll call will be a military formation during which the "oncoming fire fighters' protective clothing will be inspected by the Assistant Chief for Operations for serviceability." It is also during roll call that compliance with grooming requirements is measured, and information relevant to the day's activities is conveyed.

The firefighters are further warned that they must attend roll call. While the parties cannot agree on what discipline, if any, attaches to failure to attend roll call, the court is satisfied that an official order to attend the roll call, with protective clothing, is sufficient basis to find that attendance is required. Having ordered plaintiffs to attend to be inspected and to receive instructions and information for the day's activities, it is disingenuous for the Air Force to argue that attendance is optional or a mere convenience for plaintiffs. By convening a roll call and ordering plaintiffs to bring protective equipment, and by making roll call the occasion for passing on information which the Air Force apparently believes to be necessary for proper work performance, the Air Force is stating, in effect, that attendance at the roll call with protective equipment is a necessary, integral part of the day's principal activities. This conclusion is supported by *Baylor*, 198 Ct.Cl. at 331, which on similar facts concluded that reporting for roll call was compensable time. Although the case arose under FEPA, the court alternatively viewed the claim as if it were subject to the FLSA and the Portal Act. *See also* 60 Comp.Gen. at 523.

The argument for similarly treating the time spent getting protective clothing from the lockers, and then walking to the roll call site is only slightly less compelling. The issue is whether these actions are more similar to the line of cases [16] rejecting compensation for changing clothes, showering, and getting or putting away tools for the day, or those decisions [17] allowing compensation for preparatory activities such as getting weapons, putting on employer-issued uniforms, cleaning up after hazardous work duties, or getting essential information.

Because of the importance defendant attaches to having the protective clothing at roll call, because the clothing belongs to defendant, because of the critical nature of that clothing to plaintiffs' ability to do their work, and because it cannot be taken from the premises but must be stored in defendant's lockers, the court concludes that time necessarily spent retrieving the equipment and going to roll call is also within the terms and purposes of 5 C.F.R. § 551.412.

Defendant has in effect conceded the invalidity of this first issue by offering the affidavit of Penny J. Arnett, Employee Relations Specialist at Tyndall Air Force Base. She explains that the reason she recommended against overtime pay for the activities in question is that they did not exceed 10 minutes. It was her position that the shift change activities would have been compensable if they took more than 10 minutes. This would not be appropriate

---

**14.** 5 C.F.R. § 551.412(a)(1); FPM 990–2 S1–3.

F.Supp. at 391. The court in *Dunlop* also used the descriptor "incidental" to describe the relationship between compensable preliminary activities and principal ones. That term does not appear in other decisions and seems inconsistent with the general line of authorities.

**15.** *Steiner,* 350 U.S. at 252, 76 S.Ct. at 333.

**16.** *See, e.g., Mitchell,* 228 F.2d at 934; *Carter,* 314 F.Supp. at 386; *Nardone,* 207 F.Supp. at 336; *McComb,* 77 F.Supp. at 716.

**17.** *See, e.g., King Packing Co.,* 350 U.S. at 260, 76 S.Ct. at 337; *Steiner,* 350 U.S. at 247, 76 S.Ct. at 330; *Lindow,* 738 F.2d at 1057.

unless the activities are "closely related" and "indispensable" to a principal activity.

### 2. The de minimis rule.

Having rejected the initial prong of defendant's argument, it remains to evaluate the second, the contention that plaintiffs' claim is barred under the *de minimis* rule. The issue has to be considered because it is the court's finding that the total time involved in either roll call or retrieving and returning protective clothing does not exceed 10 minutes.

As the moving party with respect to the factual issue posed by the *de minimis* rule, defendant has the burden of establishing that there are no material facts in dispute and that it is entitled to summary judgment. RUSCC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Defendant has advanced the sworn statements of Chief Stokes and Assistant Chief Savejas. Consequently, it falls on plaintiff to provide sufficient evidence, not necessarily admissable at trial, to demonstrate that a material issue of fact exists. *Id.* at 322, 324, 106 S.Ct. at 2552, 2553. Any probative evidence presented by plaintiff is to be believed, and all inferences drawn in favor of it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988); *Troise v. United States*, 21 Cl.Ct. 48, 61 (1990).

■ In this instance, however, plaintiffs seek to reserve the right to contest at trial the issue of whether the contested activities exceed 10 minutes. They clearly cannot do that. Defendant has put forward affidavits, which, if uncontested, establish that the maximum time involved is nine minutes. Plaintiffs have not responded to that assertion at all. If the court treats as true the assertions made in Riggs' "illustrative" affidavit, the total time alleged is a maximum of seven to eight minutes. This consists of time spent getting clothing and for roll call. Riggs gives no estimate of the time spent putting clothes away. Stokes accounts for this, in effect, by asserting that when roll call took place at 7:00 a.m., roll call would normally end at 6:58 a.m., two minutes before the end of the outgoing shift. The "one or two" minutes it takes to put away protective clothing would thus occur during paid time. After the shift to a 6:55 a.m. starting time, it took a maximum of two minutes to get gear, then report at the 6:55 a.m. shift commencement for roll call, and then at the end of the day, a maximum of seven minutes for attending the next roll call and putting away clothing. Taking Riggs' affidavit at face value, therefore, and adding the maximum time conceded by Stokes and Savejas for putting away clothing, yields a total of nine minutes.

Plaintiffs have offered nothing to contest defendant's factual assertions. General denials are insufficient to create an issue of fact. The court is compelled to find that the time spent by plaintiffs on preshift and postshift activities is 10 minutes or less.

■ It is plaintiffs' position that the *de minimis* rule does not apply to scheduled work hours. For the reasons which follow, the court is persuaded that a *de minimis* rule still applies in the private sector, that it is by no means clear that plaintiffs would recover under private-sector decisional law, that any dissimilarity between application of FLSA decisional law in the private sector and the public sector is attributable to precedent binding on this court, and in any event, that such dissimilarity does not rise to the level of a direct conflict.

Plaintiffs argue that the *de minimis* rule "has [only] been employed to relieve the employer from liability where the time 'beyond the scheduled working hours' is 10 minutes or less per day...." Brief of December 6 1989, citing *Mount Clemens*, 328 U.S. at 692, 66 S.Ct. at 1194–95. Plaintiffs argue that the Court meant to treat as beyond a *de minimis* inquiry, the type of preshift movement and preparation activities that have been the subject of the decisions and regulations discussed at length above. While plaintiffs' quotation from *Mount Clemens* is accurate, it is the court's view that plaintiffs misconstrue the import of the Supreme Court's statement.

The Court in *Mount Clemens* found that Mount Clemens Pottery Company was obligated to pay for time prior to "scheduled working hours." The scheduled working hours in that case clearly did not begin until "productive work" began. *Mount Clemens*, 328 U.S. at 691, 66 S.Ct. at 1194. Plaintiffs in that case were not seeking compensation for scheduled working hours. Rather, they were looking for payment for preliminary activities. In that context, the Court holds that

> We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.

*Id.* at 692, 66 S.Ct. at 1195. It is plain that the Court was treating "scheduled working hours" as synonymous with what it referred to in that case as "productive work."

This is made clearer by an examination of the Court's treatment of preparatory activities. After the employees in *Mount Clemens* punched in and walked to their work places, they performed certain preliminary tasks necessary to productive work. The Court addressed the latter activities in the following way:

> These activities [putting on aprons and overalls, taping or greasing arms, putting on finger cots, turning on equipment, and assembling tools] are clearly work.... They involve exertion of a physical nature, controlled or required by the employer and pursued necessarily and primarily for the employer's benefit. They are performed solely on the employer's premises and are a necessary prerequisite to productive work. There is nothing in such activities that partakes only of the personal convenience or needs of the employees.... *Here again, however, it is appropriate to apply a* de minimis *doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek.*

*Id.* at 693, 66 S.Ct. at 1195 (emphasis added). It is easy to see in these words the genesis of the subsequent decisional law and regulations both with respect to treating as compensable work those preshift activities that are closely related to the work for which an employee was hired, and with respect to identifying a *de minimis* rule for those same activities.

The DOL regulation upon which plaintiffs place great reliance, 29 C.F.R. § 785.47, itself suggests the existence of a *de minimis* rule:

> In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purpose, may be disregarded. The courts have held that such trifles are *de minimis*. This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

(Citations omitted.) *See also* 29 C.F.R. § 790.8 n. 63.

If the plaintiffs' construction of the last phrase of section 785.47 is correct, i.e., that the *de minimis* rule does not apply to those types of principal activities that occur prior to or after activities the employee was hired to perform, then it is the court's conclusion that that section is too narrow a summary of decisional law on the subject.

It is agreed between the parties that the rule does not apply to those principal activities which the employee was hired to perform. It is also agreed that there is no need for it to apply to "preliminary or postliminary" activities since those are not compensable at all. *See* 29 U.S.C. § 254. For there to be any room for the rule to operate, *a priori*, it must be with respect

to that special category of principal activities arising from language in *Mount Clemens* concerning preparatory or concluding activities so closely related as to be an integral part of the principal activities for which the employee was hired. Because the rule has to apply only with respect to this hybrid type of activity, the only question is whether plaintiffs are correct in arguing that the rule: 1) does not operate if an employee is directed to appear before his or her shift; and 2) does not operate if the time is administratively measurable.

In determining whether plaintiffs are correct, the question is whether those limitations are compelled by the decisional law binding on this court. The DOL regulations expressly recognize that "ultimate decisions on interpretations of the act are made by the courts." 29 C.F.R. § 785.2.[18] It is readily observed from a reading of section 785.47, and of other DOL and OPM regulations regarding the FLSA that both agencies are attempting to capture in regulatory form their interpretations of decisional law. As this court has explained, DOL regulations are useful as guidelines for the courts, but they are not binding. *Agner v. United States*, 8 Cl.Ct. 635, 638 (1985). While section 785.47 is important as DOL's interpretation of what courts had been saying as of 1961 about treatment of "insubstantial or insignificant periods of time," it is not conclusive. The court has to read those regulations in light of subsequent case law, in light of OPM regulations, and in light of the court's own view of the cases relied upon, particularly *Mount Clemens.*

As a corollary point, the court notes that the relative importance of decisional law as against DOL regulations is somewhat different with respect to the Portal Act than is the case with respect to other aspects of the FLSA. The Portal Act contains no specific invitation or direction by Congress to the DOL to flesh out the act through regulations. Plaintiffs, for example, point to the decision of the court in *American Fed'n of Gov't Employees v. OPM*, 821 F.2d 761 (D.C.Cir.1987) ("*AFGE*"). The court in that case struck down OPM regulations dealing with a number of personnel matters. One concerned a presumption that employees at grade 11 or higher were exempt under 29 U.S.C. § 213 from overtime coverage. The court found that this regulation conflicted with regulations under the FLSA. "When the civil service and FLSA systems conflict, OPM must defer to the FLSA so that any employee entitled to overtime compensation under FLSA receives it under the civil service rules." *AFGE*, 821 F.2d at 770. The statutory provision in that case, however, is very different than 29 U.S.C. § 254. The exemption provision at issue in *AFGE* specifically gave to the Secretary of DOL the authority to give definition to the general terms of the statute:

> (a) The provisions of section 206 and 207 of this title shall not apply with respect to—
>
>> (1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary ...)....

29 U.S.C. § 213. There is nothing comparable in the Portal Act.

The Supreme Court has recognized the relevance of the specific terms of the congressional mandate:

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight un-

---

18. That regulation provides in full:

The ultimate decisions on interpretation of the act are made by the courts. The Administrator must determine in the first instance the positions he will take in the enforcement of the Act. The regulations in this part seek to inform the public of such positions. It should

thus provide a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply it." (*Skidmore v. Swift*, 323 U.S. 134, 138, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).)

less they are arbitrary, capricious or manifestly contrary to the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted); *see also New York Guardian Mortgagee Corp. v. United States*, 916 F.2d 1558, 1559 (Fed.Cir.1990).

In this same connection, the court makes some additional observations. The first is that Congress' desire to achieve compatibility between administration of the FLSA in the public and private sectors was not expressed in the 1974 Amendments themselves. This sentiment is drawn from legislative history. *See* H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News at 2837–38.[19] Without discounting the utility of legislative history, the court merely notes that the committee report can aid in interpreting the 1974 Amendments, but cannot be viewed on a level with written law itself. As the Supreme Court has instructed, "... the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).[20] An earlier Court also taught that committee reports cannot be used to manufacture doubt about an otherwise unambiguous statute. *Wisconsin R.R. Comm'n v. Chicago, Burlington & Quincy R.R.*, 257 U.S. 563, 588, 42 S.Ct. 232, 237, 66 L.Ed. 371 (1922).

As the court in *AFGE* noted, moreover, OPM was not expected merely to issue interpretive regulations. Rather, it was expected to have the authority to issue substantive regulations and to "have a great deal of authority to determine how the FLSA would be administered in the civil service." 821 F.2d at 770. As the circuit court expressed it, what Congress apparently hoped to avoid was "conflict" between the two systems. It is clear, as well, that systems do not have to be identical to avoid conflict. *AFGE*, 821 F.2d at 771 n. 11 (so long as there is not a "specific inconsistency").

From these general principles the court concludes that it was Congress' intention both that OPM have substantive rule-making authority, and that it conform federal FLSA practice with that in the private sector. These intentions are somewhat in tension, but the former is plainly written into the statute. 29 U.S.C. § 204(f). It would be inappropriate, therefore, to elevate a statement in the committee report to an ironclad rule barring any inconsistency. Congress knows how to expressly limit grants of general authority. *See Consumer Prod. Safety Comm'n*, 447 U.S. at 109, 100 S.Ct. at 2056–57.

By this, the court does not mean to suggest that the DOL regulation is irrelevant. Rather, in determining whether the regulations and rules adopted by OPM and the Air Force create a conflict with those of DOL, the initial and concluding inquiry has to be whether OPM's regulation "is based on a permissible construction of the statute[s]." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. The statutes at issue here are the Portal Act and the 1974 Amendments. In addition, because of the unique character of the Portal Act, the real comparison has to be between the OPM regulation and the Portal Act, as construed by the courts. The DOL regulations are merely useful in determining whether the government regulations in question have imper-

---

19. It is the intent of the committee that the Commission [OPM] will administer the provisions of the law in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy.

20. *Accord Pittston Coal Group v. Sebben*, 488 U.S. 105, 115, 109 S.Ct. 414, 420–21, 102 L.Ed.2d 408 (1988) (where the Court holds that the failure of the legislative history to deal with a specific type of power otherwise embraced within the statute's general grant of authority to the agency was held to be of no consequence).

missibly strayed from the FLSA and the Portal Act.

Section 785.47 appears to view the *de minimis* rule as an expression primarily of concern about the practical difficulties involved in measuring some types of work activities. Certain jurisdictions [21] focus the inquiry more on the regularity of the work and the difficulty involved in recording the time and thus support this view of the *de minimis* doctrine. This is a somewhat narrower [22] reading of the doctrine than that set out in *Mount Clemens*, however. The Supreme Court appears to treat it as a principle of insubstantiality. *Id.* 328 U.S. at 692, 66 S.Ct. at 1194–95. It has been construed in much the same way by the Court of Claims and the Claims Court. Decisions of this court construing the FLSA have developed a rule of thumb that 10 minutes of preliminary or postliminary work that would otherwise be compensable because it is closely related to principal activities will nonetheless be treated as non-compensable if it totals less than 10 minutes per day. *See, e.g., Amos,* 13 Cl.Ct. at 442; *IBM,* 11 Cl.Ct. at 593; *Whelan Sec.,* 7 Cl.Ct. at 499–500; *Graham,* 3 Cl.Ct. at 795. *Graham* was affirmed on appeal. In addition, this court has held [23] and the Sixth Circuit has plainly suggested [24] that cases decided under the FEPA are relevant in construing the FLSA. There is no question but that a 10 minute *de minimis* rule applies in Court of Claims decisions under

FEPA. *See, e.g., Bantom,* 165 Ct.Cl. at 318; *Ahearn,* 142 Ct.Cl. at 312; *accord Crawford v. United States,* 169 Ct.Cl. 546, 565 (1965) (apparently enforcing a 15 minute minimum drafted into Navy regulations). The decisions binding or most persuasive for this court thus do not appear to give the same conclusive weight to the "impracticality" factor which figures so prominently in section 785.47, and instead have created a 10 minute *de minimis* rule.

The latter observations concerning the decisions of the Court of Claims and of this court do not appear to have escaped the attention of OPM. It is apparent that the regulation at issue, 5 C.F.R. § 551.412(a)(1), is a recitation of the state of the law in this jurisdiction.

Moreover, contrary to plaintiffs' assertion, it has to be observed that even cases outside the Court of Claims or the Claims Court clearly recognize the continued existence of a *de minimis* rule after passage of the Portal Act, even in the context of preshift or postshift activities that regularly recur.[25] The focus of the debate and inquiry has not been on whether plaintiffs were required to be on the premises at a given moment, but on the purposes for their being there. While it is true that the degree to which the employer regularly required the employees' presence on premises has been treated as a relevant factor,[26] it is also true that that factor does not appear to be treated as a litmus test.[27] It

21. See *Lindow,* 738 F.2d at 1063 (9th Cir.), and cases cited there.

22. The probable source of the narrow view of the *de minimis* rule expressed at 29 C.F.R. § 785.2 appears to be a colloquy between Senators Barkley and Cooper at the time of the passage of the Portal Act. See 29 C.F.R. § 790.8 n. 63. In commenting on an example in the committee report to the Portal Act, Senator Cooper, one of the sponsors of the act, stated, "There was no definite purpose in using the words '30 minutes' instead of 15 minutes or 10 minutes or 5 minutes or any other number of minutes." 93 Cong.Rec. 2350. The drafters of the regulation put a "Compare" citation at that point to the decision of the Supreme Court in *Mount Clemens.*

23. *Agner,* 8 Cl.Ct. at 638 ("... the two acts are *in pari materia.*").

24. See *Hill v. United States,* 751 F.2d 810, 814 (6th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

25. See *Dunlop,* 527 F.2d at 394; *Panama Canal,* 314 F.Supp. at 386; *Nardone,* 207 F.Supp. at 336.

26. *Hill v. United States,* 751 F.2d 810, 815 (6th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *Lindow,* 738 F.2d at 1063.

27. Although not essential to the outcome, the court notes that even if the *de minimis* rule is one of "practicability," the result would appear to be the same. The amount of time spent at roll call, and to a lesser extent, in retrieving and returning protective clothing, is variable as Stokes and Savejas have stated in their affidavits. This is particularly true after shift com-

 

certainly has not precluded application of a *de minimis* rule.[28]

The question thus is whether OPM's development of a 10 minute threshold for time spent in preshift and postshift activities that are not the elements of the job itself is a "proper construction" of the Portal Act exception for preliminary or postliminary activities in light of decisional law. As an administering agency, OPM's interpretation of the statute is entitled to great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The administering agency's interpretation of a statute should be followed unless there are compelling indications that it is wrong. *Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969). In this instance, the court concludes that OPM's interpretation is a proper one. It concludes as well that because it is sufficiently uncertain whether plaintiffs would recover for the time in question if they were employed in the private sector, there is no conflict between the government regulations in question and administration of the Portal Act in the private sector.

### IV. CONCLUSION

Defendant's motion to dismiss the complaints of Riggs and Spalding for lack of jurisdiction is granted. The Clerk is directed to enter judgment dismissing their complaints without prejudice. Defendant's motion for summary judgment limited to plaintiffs Delonjay and Chalker is denied.[29] Defendant's motion for summary judgment as to all other plaintiffs is granted. The Clerk is directed to enter judgment dismissing the complaint with prejudice as to plaintiffs Lewis Williams, William Weems, Paul Green, Michael Delonjay, and Jerry Chalker. No costs.

---

mencement was moved to 6:55 a.m., so that it occurred during duty hours for the oncoming shift. Whereas previously it could be argued that no matter how long roll call lasted, it would take up five minutes of the firefighters' own time, after August 1988, there is no reason to presume that the entire five minutes is obligated to the Air Force. An attempt to accurately capture time spent on roll call for the exiting shift and on retrieving and returning protective equipment would be difficult. It would vary by day and by individual. It has become possible for the Air Force to pay for overtime in one minute intervals, but it is not unreasonable for the Air Force to take the position that even if it has the obligation to pay for preshift and postshift activities, capturing that time is not necessary in view of the administrative inconvenience.

**28.** *See E.I. Du Pont De Nemours*, 227 F.2d at 133; accord *Lindow*, 738 F.2d at 1063.

**29.** These two plaintiffs are also plaintiffs with respect to other relief sought in *William D. Allen, et al. v. United States*, No. 272–88C (Claims Court). The question of whether Delonjay and Chalker are exempt from coverage of the FLSA is raised in that action, as well as in the related case of *Frank H. Adams, et al. v. United States*, No. 90–346C (Claims Court), also based on a different theory of relief. In view of the court's conclusion here that plaintiffs in this action cannot recover, there is no need to address the non-jurisdictional issue raised in the supplemental motion for summary judgment.